# EXHIBIT D



Writer's Direct:
Phone: (859) 426-2110
Fax: (859) 788-2011
Email: aswitzer@dbllaw.com

January 7, 2025

**Sent Via Electronic Mail and Regular U.S. Mail**
Christine Sei (cchadwi@hotmail.com)
6989 Turner Road
Frisco, TX 75036

Re:    **Courtesy Reminder of Obligations under Employee Confidentiality, Non-Competition and Assignment of Invention Agreement with CenTrak, Inc.**

Dear Ms. Sei:

Please be advised that this office represents CenTrak, Inc. ("CenTrak"). I am writing concerning a courtesy reminder of the obligations to which you agreed in the Employee Confidentiality, Non-Competition and Assignment of Invention Agreement (the "Agreement") which you executed with CenTrak on March 1, 2021. For your reference, a copy of the Agreement is attached.

One of the obligations to which you agreed is that for a period of one (1) year following your termination of employment from CenTrak, regardless of the reason for your termination of employment, you will not directly or indirectly compete with the business of CenTrak (the "Covenant Not to Compete"). Additionally, you agreed that for a period of one (1) year following your termination of employment from CenTrak, regardless of the reason for your termination of employment, you would not solicit, recruit, or hire any employees of CenTrak, nor would you solicit, divert, or take away, or attempt to solicit, divert or take away the business or patronage of any customers or prospectives customers of CenTrak (the "Covenants Not to Solicit"). Since your termination of employment from CenTrak occurred on November 15, 2024, your Covenant Not to Compete and your Covenants Not to Solicit remain in full force and effect until November 15, 2025. In addition to your Covenant Not to Compete and your Covenants Not to Solicit, you further agreed to protect the confidentiality of and to not disclose or use CenTrak's confidential and proprietary information. Those obligations remain fully in effect.

CenTrak reserves all rights under the Agreement, and all other available rights at law and equity, without limitation or waiver.

Thank you for your attention to these matters.

Dressman Benzinger LaVelle psc
Attorneys at Law

CINCINNATI OFFICE:    221 East Fourth Street, Suite 2500, Atrium Two • Cincinnati, Ohio 45202-4100 • Phone: (513) 241-4110 • Fax: (513) 241-4551
COVINGTON OFFICE:    109 East Fourth Street, Covington, Kentucky  41011 • Phone:  (859) 341-1881 • Fax: (859) 788-2011
LOUISVILLE OFFICE:    321 West Main Street, Suite 2100, Waterfront Plaza • Louisville, Kentucky  40202-4284 • Phone:  (502) 572-2500 • Fax:  (502) 572-2503

www.dbllaw.com

Page 2 of 2
January 7, 2025

Sincerely,

/s/ Alexis R. Switzer
Alexis R. Switzer

Enclosure

Dressman Benzinger LaVelle psc
Attorneys at Law

CINCINNATI OFFICE:    221 East Fourth Street, Suite 2500, Atrium Two • Cincinnati, Ohio 45202-4100 • Phone: (513) 241-4110 • Fax: (513) 241-4551
COVINGTON OFFICE:    109 East Fourth Street, Covington, Kentucky  41011 • Phone:  (859) 341-1881 • Fax: (859) 788-2011
LOUISVILLE OFFICE:       321 West Main Street, Suite 2100, Waterfront Plaza • Louisville, Kentucky  40202-4284 • Phone:  (502) 572-2500 • Fax: (502) 572-2503

www.dbllaw.com



# CenTrak, Inc. Employee Confidentiality, Non-Competition and Assignment of Invention Agreement

This Employee Confidentiality, Non-Competition and Assignment of Invention Agreement ("Agreement") is by and between CenTrak, Inc. and any of its subsidiaries or affiliates (collectively "CenTrak") and the undersigned employee ("Employee").

NOW, THEREFORE, in consideration of the covenants, terms, and conditions contained in this Agreement, CenTrak and Employee agree as follows:

1.      **CONSIDERATION.** Employee and CenTrak acknowledge and agree that Employee's execution of this Agreement is a condition to Employee's employment with CenTrak. Employee acknowledges and agrees that employment by CenTrak with an opportunity for a payment under CenTrak's various compensation plans constitutes valuable and sufficient consideration for the execution of this Agreement, including the restrictive covenants contained in this Agreement. Employee further acknowledges that CenTrak has a substantial investment in the matters protected by this Agreement, including the confidential information, training, and knowledge supplied or to be supplied to Employee in connection with Employee's employment. Employee acknowledges that Employee has carefully reviewed all of the covenants, terms and conditions of this Agreement, and has been advised to seek independent legal counsel prior to its execution.

2.      **RESTRICTIVE COVENANTS.** In consideration of the covenants, terms and conditions in this Agreement, Employee agrees to the following restrictive covenants:

2.1.    Non-Disclosure of Confidential Information. Employee acknowledges that Employee's position with CenTrak will expose Employee to certain confidential, competitively sensitive and proprietary information of CenTrak including, without limitation, techniques; know how; processes; strategies; systems; databases; applications; programs software; methods of operation; negotiations and contracts; research and development; engineering data; financial information (including financial statements); pricing and cost information and strategies; data regarding sales; employee identity and lists; customer identity and lists; potential customer identity and lists; customer requirements information received from any customer of CenTrak; supplier and vendor identity and lists; training materials; product designs; artist content of productions; marketing information, research and strategies; business plans; projections; programming data; formulas; secret processes; machinery or devices; research projects; strategic plans or other information considered by CenTrak to be confidential, competitively sensitive or proprietary or that is considered a trade secret under applicable law, whether in tangible, electronic or other form or medium ("Confidential Information"). Employee acknowledges that Confidential Information is a valuable, special and unique asset of CenTrak. Employee will not, directly or indirectly, during or at any time after Employee's employment with CenTrak, use Confidential Information or any part of such Confidential Information for Employee's benefit or the benefit of any person, business or entity or disclose Confidential Information or any part of such Confidential Information to any person, business, or entity for any reason or purpose whatsoever, except upon the prior written consent of CenTrak. Employee will not, by any means, transfer or forward outside of CenTrak's computer network any CenTrak information, including, without limitation, Confidential Information, without the prior written consent of the CenTrak. The confidentiality obligations herein shall not prohibit Employee from divulging Confidential Information by order of court or agency of competent jurisdiction or as otherwise required by law; however, Employee shall promptly inform CenTrak of any such situations and shall take reasonable steps to prevent disclosure of Confidential Information until CenTrak has been notified of such required disclosure and has had a reasonable opportunity to seek a protective order. Any such notification to CenTrak shall be made pursuant to Section 8 of this Agreement.

2.2.    Non-Solicitation of Employees and Agents. During the term of this Agreement and for a period of one (1) year after Employee's employment with CenTrak is terminated by either party for any reason or no reason, Employee shall not, directly or indirectly, solicit, encourage or induce or attempt to solicit, encourage or induce,



any person who provides services to CenTrak, whether as an employee, consultant, independent contractor or agent, or any entity which provides services to CenTrak under an agency relationship to terminate his, her or its relationship with or services for CenTrak, and shall not, directly or indirectly, either individually or as owner, agent, employee, consultant or otherwise, employ or offer employment to any person, agent or entity that provided services to CenTrak unless such person, agent or entity shall have ceased to provide services to CenTrak, or to have had a legal relationship with CenTrak, for a period of at least six (6) months.

2.3.     Non-Solicitation of Customers and Prospective Customers. During the term of this Agreement and for a period of one (1) year after Employee's employment with CenTrak is terminated by either party for any reason or no reason, Employee will not, directly or indirectly, solicit, contact, or do business with or attempt to solicit or do business with any customer or prospective customer of CenTrak, with respect to activities which compete in whole or in part with the activities of CenTrak. For purposes of this Agreement, "customer" includes any person, business, or entity with whom Employee directly or indirectly had transacted business during Employee's employment with CenTrak. For purposes of this Agreement, "prospective customer" includes any person, business, or entity: (i) that Employee contacted, solicited, or in any way dealt at any time within the twelve (12) month period immediately preceding Employee's termination of employment with CenTrak for the purpose soliciting the sale of goods and/or services of CenTrak; (ii) any person, business, or entity for whom Employee had any direct or indirect responsibility at any time within the twelve (12) month period immediately preceding Employee's termination of employment with CenTrak; and (iii) any person, business, or entity with whom CenTrak, with Employee's direct or indirect participation, had made contact and provided a quote or proposal or had been asked to provide a quote or proposal within the twelve (12) month period immediately preceding Employee's termination of employment with CenTrak.

2.4.     Non-Competition. During the term of this Agreement and for a period of one (1) year after Employee's employment with CenTrak is terminated by Employee for any reason or no reason or by CenTrak for cause, Employee shall not, directly or indirectly on behalf of Employee or any other person, business or entity, compete with CenTrak in the Territory. For purposes of this Agreement, "for cause" means CenTrak's termination of Employee's employment for behavior that, in the sole discretion of the Company, amounts to a violation of the CenTrak's business guidelines. For purposes of this Agreement, "compete" means participating in the discovery, reduction to practice, manufacture, management, planning, research, development, or sale of real time locating technology and/or environmental monitoring (including without limitation the monitoring and/or control of temperature, humidity and other environmental conditions) infant, child or adult wander prevention, emergency alert, and/or senior care. For purposes of this Agreement, "Territory" means the United States, and any geographic areas outside of the United States serviced by Employee during the three (3) year period immediately preceding Employee's termination of employment with CenTrak.

2.5.     Return of CenTrak Property and Confidential Information. Immediately upon the termination of Employee's employment with CenTrak for any reason or no reason, Employee shall return to CenTrak all materials (in whatever form or medium, including electronically stored information) comprising or containing any Confidential Information and all other CenTrak Property in Employee's possession or control. Employee shall not retain any copies of any Confidential Information or CenTrak Property. If the CenTrak Property is not returned in good working order, Employee agrees to pay for any necessary repairs. Employee agrees not to remove any CenTrak Property or tangible Confidential Information from CenTrak's premises except as required in the performance of Employee's work for CenTrak. CenTrak Property is subject to inspection by CenTrak at any time without prior notice. For purposes of this Agreement, "CenTrak Property" means any property (i) owned by CenTrak, (ii) situated on CenTrak's premises, or (iii) provided to Employee by CenTrak.

3.     **INVENTIONS**

3.1.     Inventions. Employee understands that CenTrak is engaged in a continuous program of research, development, production and marketing and sales in connection with its business and that, as an essential part of



employment with CenTrak, Employee may be expected to make new contributions to and create inventions of value for the Company.

3.2.     Disclosure. During the entire course of employment with CenTrak, Employee will fully and promptly disclose to CenTrak all inventions, improvements, designs, techniques, processes, procedures, original works of authorship, computer software programs, trade secrets and other intellectual property ("Inventions"), that are made, conceived, first reduced to practice or created by Employee, either alone or with others. Employee shall assign to CenTrak any prior inventions, except those prior inventions listed in Schedule A which shall not belong to CenTrak (the "Prior Inventions").

3.3.     Assignment of Inventions.  Employee acknowledges that copyrightable works prepared by Employee within the scope of Employee's employment are "works for hire" under the United States Copyright Act and that CenTrak will be considered the author of such works.  Employee agrees that all Inventions that (a) are developed using equipment, supplies, facilities or trade secrets of CenTrak, (b) result from work performed by Employee for CenTrak, or (c) relate to CenTrak's business, will be the exclusive property of CenTrak and are assigned by Employee to CenTrak. Employee irrevocably assigns to CenTrak all intellectual property rights (including, but not limited to, patents, copyrights, and trademarks) in any such Invention and any right to modify or control such Inventions (also known as "moral rights"). In the event Employee is unable or unwilling to execute any required assignment documents described in this document, Employee hereby authorizes CenTrak to execute such documents on Employee's behalf, to the extent necessary to effectuate such assignments.

3.4.     Assistance.  Employee will assist CenTrak in obtaining legal protections for CenTrak's Inventions in any and all countries.  Employee will execute any documents that CenTrak may reasonably request for use in obtaining or enforcing any legal protections and intellectual property rights of CenTrak.

4.     **REVOCATION OF AUTHORIZATION**. Immediately upon the termination of Employee's employment with CenTrak for any reason or no reason, Employee is not permitted to access CenTrak's computer network for any purpose. Any and all authorizations for use of CenTrak's computer network are considered revoked as of the termination of Employee's employment with CenTrak. The provisions of this section apply to the computer network of any affiliate or subsidiary of CenTrak.

5.     **REMEDIES.**  Employee acknowledges that breach of this Agreement by Employee will cause CenTrak substantial and irreparable harm, which may not be adequately compensated by damages. In the event of Employee's actual or threatened breach of the provisions of any or all of the terms of this Agreement, CenTrak shall be entitled to obtain equitable relief, including an order requiring Employee to take any affirmative action necessary to effectuate the terms of this Agreement, and enjoining Employee from committing such actual or threatened breach of this Agreement.  Employee agrees and acknowledges that CenTrak is entitled to equitable relief without posting a bond.  In addition to these equitable remedies, CenTrak shall also be entitled to recover from Employee all of its legal remedies along with any reasonable attorney's fees, expenses and costs CenTrak incurs in connection with Employee's breach or threatened breach of this Agreement. If any provision or restriction of this Agreement is determined to be unenforceable, the remaining provisions and restrictions shall not be affected by such determination. Employee further acknowledges and agrees that no material or other breach of any contractual or legal duty by CenTrak under this Agreement or otherwise shall be held sufficient to excuse or terminate Employee's obligations under this Agreement or to preclude CenTrak from obtaining injunctive relief.

If a court of competent jurisdiction determines that any provision or restriction in Section 3 is unreasonable or unenforceable, Employee and CenTrak agree that said court shall modify such restriction or provision so that it becomes a reasonable and enforceable restriction on the activities of Employee. Employee acknowledges and agrees that the restrictions contained in Section 3 are reasonable and necessary to protect the legitimate business interests of CenTrak and will not impair Employee's ability to earn a living. Employee further acknowledges and agrees that the restricted periods of time set forth in Section 3 are material terms of this Agreement and that



CenTrak is entitled to Employee's full compliance for the entire periods of time. To insure such compliance Employee agrees that the restricted periods of time in Section 3 shall be tolled during any period of time Employee is not in full compliance with such restrictions.

6.    **REPRESENTATION OF EMPLOYEE.** As a material term of this Agreement, Employee makes the following representations to CenTrak:

6.1.    Employee represents to CenTrak that Employee is not subject to any confidentiality, non-disclosure, non-solicitation, invention, or non-competition restrictions or limitations regarding any employment prior to CenTrak.

6.2.    Employee represents that if any confidentiality, non-disclosure, non-solicitation, invention, or non-competition restrictions or limitations exist regarding any prior employment, Employee has fully disclosed to CenTrak those restrictions and limitations and confirmed that Employee's employment with CenTrak will not violate those restrictions or limitations.

6.3.    Employee represents and agrees that following Employee's termination of employment with CenTrak, Employee will disclose to any future employer of Employee the restrictions and terms contained in this Agreement. Employee further agrees that CenTrak and its successors and assigns may notify any prospective or future employer of Employee of the restrictions and terms contained in this Agreement.

6.4.    Employee represents that following Employee's termination of employment with CenTrak, during any of the restricted periods set forth in Section 2, Employee will immediately notify CenTrak in writing of the identity of any prospective or actual employers of Employee.

7.    **NOTICE.** Any notice to CenTrak under this Agreement shall be in writing and sent postage prepaid via certified mail return receipt requested addressed to:

> CenTrak, Inc.
> 826 Newtown-Yardley Road
> Newtown, PA 18940
> ATT: CenTrak Legal, e. legal@centrak.com

8.    **CHOICE OF LAW.** This Agreement shall be governed in all respects whether as to validity, construction, capacity, performance or otherwise by the laws of the Commonwealth of Pennsylvania without regard to conflict of law principles. With respect to any disputes under this Agreement, the parties submit to the venue and exclusive jurisdiction of the Commonwealth and federal courts in Bucks County, Pennsylvania, and waive any claims as to forum non-convenience with respect to such courts.

9.    **MISCELLANEOUS.** This Agreement shall bind and inure to the benefit of the parties and their respective legal representatives, heirs, successors, and assigns, except as otherwise provided in this Agreement. This Agreement is personal to Employee, and Employee may not assign Employee's rights (or delegate Employee's duties) under this Agreement without the prior written consent of CenTrak. CenTrak may assign all of its rights under this Agreement to its successors and assigns. No amendments, modifications, alterations, or additions to this Agreement shall be binding unless made in writing and signed by CenTrak and Employee. The failure of any party to enforce a breach of this Agreement shall not be construed as a waiver of the right to enforce any other breach. The parties stipulate and agree that each and every paragraph, sentence, term, and provision of this Agreement shall be considered independent, reasonable, and severable. The invalidity or unenforceability of any particular provision of this Agreement shall not affect the other provisions of it; and this Agreement shall be construed in all respects as if such invalid or unenforceable provision was omitted. This Agreement constitutes the entire agreement of the parties concerning the subject matter of this Agreement, with all prior negotiations and agreements concerning the subject matter of this Agreement, whether written or oral,



being replaced and superseded by this Agreement, except that any agreement relating to inventions or intellectual property signed by Employee shall remain in effect.

10.    **BRIBERY AND CORRUPTION.** As a member of the Halma™ family of companies, CenTrak adheres to the Halma™ Bribery and Corruption Policy Statement (the "B&C Policy"), which may be found at:

http://www.halma.com/about-halma/code-of-conduct//~/media/Files/H/Halma-Plc-V2/about-us/code-of-conduct/halma-code-of-conduct-sep-2011-a4.pdf.

In accordance with the B&C policy, CenTrak has a zero-tolerance policy towards any bribery or corrupt practices in its business dealings. Honoring the spirit and letter of this policy is expected, despite what may be locally acceptable business practice or convention. Employee represents and warrants that Employee has not engaged in business practices, which violate the B&C Policy or any applicable local, state, federal and foreign laws, orders, rules and regulations regarding bribery and corruption. Employee shall remain in compliance with this clause during the term of this Agreement and while conducting any business dealings with, or on behalf of CenTrak. In addition, CenTrak expects those with whom it does business to disclose any coercion by others that may be in violation of the law. In the event that CenTrak determines, in its reasonable sole discretion, that Employee has breached this clause, CenTrak may terminate this Agreement and any other agreement with Employee without penalty and without any compensation to Employee. Employee shall indemnify and hold CenTrak harmless for all claims, demands, damages, costs, fines, penalties, reasonable attorney's fees, and all other expenses arising from failure of the Employee to comply with this clause.

IN WITNESS WHEREOF, intending to be legally bound, the parties have entered into this Agreement effective as of the date signed by the Employee.

**CENTRAK, INC.**                                    **EMPLOYEE**

By: _Thomas Veitz_ (Electronically Signed By)        Name: _Christine Sei_ (Electronically Signed By)

Printed: _Thomas Veitz_                              Printed: _Christine Sei_

Its: _____                         Date: _3/1/2021_

Date: _3/1/2021_



Writer's Direct:
Phone: (859) 426-2110
Fax: (859) 788-2011
Email: aswitzer@dbllaw.com

January 7, 2025

**Sent Via Electronic Mail**
Peter Rodrigues (rodrigues.pete@gmail.com)

Re:    **Cease and Desist - Notice of Obligations - Employee Confidentiality, Non-Competition and Assignment of Invention Agreement with CenTrak, Inc.**

Dear Mr. Rodrigues:

This office represents CenTrak, Inc. ("CenTrak"). I am writing concerning the obligations to which you agreed in the Employee Confidentiality, Non-Competition and Assignment of Invention Agreement (the "Agreement") which you executed with CenTrak on December 21, 2015. For your reference, a copy of the Agreement is enclosed.

One of the obligations to which you agreed is that for a period of one (1) year following your termination of employment from CenTrak, regardless of the reason for your termination of employment, you will not directly or indirectly compete with the business of CenTrak (the "Covenant Not to Compete"). Additionally, you agreed that for a period of one (1) year following your termination of employment from CenTrak, regardless of the reason for your termination of employment, you would not solicit, recruit, or hire any past or present members, directors, employees, contractors, or other business associates of CenTrak, nor would you solicit, divert, or take away, or attempt to solicit, divert or take away the business or patronage of any CenTrak clients, customers, business contacts or accounts (the "Covenants Not to Solicit"). Since your termination of employment from CenTrak occurred on September 30, 2024, your Covenant Not to Compete and your Covenants Not to Solicit remain in full force and effect until September 30, 2025. In addition to your Covenant Not to Compete and your Covenants Not to Solicit, you further agreed to protect the confidentiality of and to not disclose or use CenTrak's confidential and proprietary information. Those obligations remain fully in effect.

CenTrak is aware that you are currently employed by Commure, Inc., ("Commure") as Vice President of Sales – the same position that you held at CenTrak. Thus, your employment with Commure is in direct violation of the Employee Confidentiality, Non-Competition and Assignment of Invention Agreement. CenTrak also has cause to believe that you have impermissibly solicited CenTrak's employees, in further violation of your Employee Confidentiality, Non-Competition and Assignment of Invention Agreement.

Accordingly, CenTrak hereby provides notice of your obligations under the Agreement and demands that you cease and desist from any further violations of the Agreement. Specifically,

Dressman Benzinger LaVelle psc
Attorneys at Law

CINCINNATI OFFICE:    221 East Fourth Street, Suite 2500, Atrium Two • Cincinnati, Ohio 45202-4100 • Phone: (513) 241-4110 • Fax: (513) 241-4551
COVINGTON OFFICE:   109 East Fourth Street, Covington, Kentucky  41011 • Phone:  (859) 341-1881 • Fax: (859) 788-2011
LOUISVILLE OFFICE:    321 West Main Street, Suite 2100, Waterfront Plaza • Louisville, Kentucky  40202-4284 • Phone:  (502) 572-2500 • Fax:  (502) 572-2503

www.dbllaw.com

Page 2 of 2
January 7, 2025

CenTrak demands that you cease and desist from using or disclosing any of CenTrak's confidential or proprietary information. CenTrak further demands that you cease and desist from soliciting or recruiting any past or present employees of CenTrak. CenTrak further demands that you comply with all obligations set forth in the Agreement, and advises you that CenTrak has not, and will not, waive any of your obligations, or its rights, under the Agreement.

Because these violations of your agreement may likely become the subject of litigation, we inform you that you have an obligation to preserve any documents, e-mails, electronic files, and other potential information that may be related in any way to such litigation, including, without limitation, hard copy documents and correspondence, as well as Electronically Stored Information ("ESI"). ESI includes, but is not limited to, communications, documents and information stored on computer systems, electronic storage media, back-up tapes, electronic emails, telephone records and logs, word processing documents, spreadsheets, databases, calendars, digital images, Internet usage files, network access information, system servers, stand-alone computers and laptops (including all hard drives), personal digital assistants, voice mails, voice over internet protocols, text messages, and cellular telephones. Also subject to the preservation obligation are documents and communications in your possession, custody or control relating to your work for CenTrak; compliance or failure to comply with the Agreement; and disclosure or use of CenTrak's confidential and/or trade secret information, and/or any other matter raised herein.

You should refrain from deleting, discarding, or otherwise destroying any documents (including originals, drafts, and copies), ESI and tangible materials related to the matters set forth in this letter. Also, please note that potentially relevant documents, files, communications, and other information should be preserved and retained in the state and format that they currently exist. This includes placing a hold on all potentially relevant active and archived files and ceasing all ordinary document destruction and deletion practice. Copying or manipulation of such files could modify relevant information, and thus result in evidence spoliation.

In the event that you do not comply with the demands herein, please be advised that CenTrak is prepared to enforce its rights under the Agreement to the fullest extent permitted by law. CenTrak reserves all rights under the Agreement, and all other available rights at law and equity.

If you do not comply with the demands herein within ten (10) days of the date of this letter, CenTrak will do whatever is necessary to protect its business interests.

Sincerely,

/s/ Alexis R. Switzer
Alexis R. Switzer

Enclosure



**EMPLOYEE CONFIDENTIALITY, NON-COMPETITION AND ASSIGNMENT OF INVENTION AGREEMENT**

In consideration of my employment with CenTrak, a Delaware corporation (the "Company", "you" or "we"), I agree with the Company as follows:

　　1.　　**Company Business**.  I understand that the Company is engaged in a continuous program of research, development, production and marketing in connection with its Business and that, as an essential part of my employment with the Company, I may be expected to make new contributions to and create inventions of value for the Company.  For purposes of this agreement, "Business" shall mean the design, manufacture or sale of real-time location or tracking equipment, or such other business as the Company may enter into, or contemplate entering into, in the future.

　　2.　　**Disclosure of Inventions**.  Following the date I first become an employee and during the entire course of my employment with the Company, I will fully and promptly disclose to the Company all inventions, improvements, designs, techniques, processes, procedures, original works of authorship, computer software programs, trade secrets and other intellectual property ("Inventions"), that are made, conceived, first reduced to practice or created by me, either alone or with others. I shall assign to the Company any prior inventions, except those prior inventions listed in Schedule A which shall not belong  to the Company (the "Prior Inventions").

　　3.　　**Assignment of Inventions**.  I acknowledge that copyrightable works prepared by me within the scope of my employment are "works for hire" under the United States Copyright Act and that the Company will be considered the author of such works.  I agree that all Inventions that (a) are developed using equipment, supplies, facilities or trade secrets of the Company, (b) result from work performed by me for the Company, or (c) relate to the Company's Business, will be the exclusive property of the Company and are assigned by me to the Company. I irrevocably assign to the Company all intellectual property rights (including, but not limited to, patents, copyrights, trademarks) in any such Invention and any right to modify or control such Inventions (also known as "moral rights"). In the event I am unable or unwilling to execute any required assignment documents described in this document, I hereby authorize the Company to execute such documents on my behalf, to the extent necessary to effectuate such assignments.

　　4.　　**Assistance**.  I will assist the Company in obtaining legal protections for the Company's Inventions in any and all countries.  I will execute any documents that the Company may reasonably request for use in obtaining or enforcing any legal protections and intellectual property rights of the Company.

　　5.　　**Proprietary Information**.  I understand that my employment by the Company creates a relationship of confidence and trust with respect to any information of a confidential nature that may be disclosed to me by the Company that relates to the business of the Company (such as Inventions, marketing plans, product plans, business strategies, financial information, forecasts, personnel information and customer lists), or its affiliates, customers or suppliers ("Proprietary Information").  During and after my employment, I will keep all Proprietary Information confidential, and I will only disclose Proprietary Information, when properly authorized to do so, in performing my duties as a member of the Company.

　　6.　　**Surrender of Company Property.** Upon termination of my employment with the Company, for whatever reason, or upon any request from the Company, I will promptly surrender to the Company all files, documents, letters, memoranda, records, data, models, computer equipment or devices, computer programs, or any other written, photographic, or tangible materials containing Proprietary Information, and any copies thereof, and any other Company property in my possession, custody or control.  I will not retain, take with me, use or pass on, directly or through any other individual or entity, any such materials or copies thereof or any other Company property. All such materials and copies thereof and any other Company property shall be and are the exclusive property of the Company to be used by me only in the performance of my duties for the Company and shall not be copied or removed from Company premises except in the pursuit of authorized Company business.  I further agree to promptly return all equipment provided to me by the Company for use during my employment and understand that I have no right to retain any such equipment for any reason whatsoever.

　　7.　　**Confidentiality**.  At all times, both during my employment and after its termination, I will keep and hold all such Proprietary Information in strict confidence and trust, and I will not use or disclose any of such Proprietary Information without the prior written consent of the Company, except as may be necessary to perform my duties as an employee of the Company for the benefit of the Company.  Upon termination of my employment with the Company, I will promptly deliver to the Company all documents and materials of any nature pertaining to my work with the Company and I will not take with me any documents or materials or copies thereof containing any Proprietary Information. The obligations contained in this Agreement shall be supplementary to and in no way deemed a limitation of the Company's rights as they may otherwise exist pursuant to

| | Document Name: | Employee Confidentiality |
|---|---|---|
| | Document Number: | HR-50002 |
| | Effective Date: | April 20, 2012 |
| | Page 1 of 5 | |



applicable law. It is my intention to provide the Company with the greatest protection of its confidential information as is permitted by law.

**8.** **No Breach of Prior Agreement**. The performance of my duties as an employee of the Company will not breach any invention assignment, proprietary information or similar agreement with any former employer or other party and I will not use in the performance of my duties any documents or materials of a former employer that are not generally available to the public or have not been legally transferred to the Company.

**9.** **Duty Not to Compete.**

(a)    During my employment at the Company and for a period of one (1) year after the termination of that employment, I will not, without the Company's express written consent, directly or indirectly engage in any consulting, employment with one of the Listed Competitors (as defined in Schedule B) or any other business that is "competitive" with the Company or assist others in any business that is "competitive" with the Company.   A company shall be considered "competitive" with the Company if such company engages in the Business.

(b)    I and the Company agree that the scope of the obligations contained in Section 9(a) of this Agreement are reasonable. However, should a court of competent jurisdiction ever find any of the provisions of Sections 9(a) to be invalid or unenforceable, I and the Company agree that such provisions shall be enforced to the fullest extent permitted by law.  If the provision found to be invalid or unenforceable cannot be enforced as written, I and the Company agree that the provision shall be read to provide the Company with the greatest protection of its legitimate business interests permitted by applicable law.

**10.** **Non-Solicitation/Non-Interference.**

(a)    During my employment at the Company and for a period of one (1) year after the termination of that employment, regardless of the reason for such termination, I agree that I will not:

(i) recruit, solicit, or hire, or assist others in recruiting, soliciting or hiring, any past or present members, director, employee, contractor or other business associate (collectively each a "Business Relation") or otherwise induce any Business Relation to terminate or cease his/her employment or other business relationship with the Company.  The term Business Relation shall include those individuals or entities who were employed, engaged or associated with the Company during my employment, but shall not include any individual who has not had any business relationship with the Company for a period of six consecutive months at the time of the recruiting, solicitation or hiring.

(ii)   solicit, divert, or take away, or attempt to solicit, divert or take away the business or patronage or any of the clients, customers, business contacts or accounts, or prospective clients, customers or accounts of the Company which are or were contacted, solicited, or served by the Company.  For the purposes of this agreement the term "prospective client, customer or accounts" shall include those individuals and/or entities with which the Company has had contact.

(b)    I understand and agree that situations may arise in the future that require you to let my future employers know about my responsibilities under this Agreement and hereby authorize the Company to disclose the existence of the restrictions contained in this Agreement to all third parties the Company deems appropriate to protect its legitimate business interests.

**11**.    **Name & Likeness Rights, Etc.**.  The Company may use my name and biographical information in any media during my employment for any business purpose.

**12.** **Non-Monetary Relief**.  I understand that in the event of a breach or threatened breach of this Agreement by me the Company may suffer irreparable harm and will therefore be entitled to non-monetary relief (also known as injunctive relief) to enforce this Agreement, without in any way limiting the Company's rights to seek all such other relief as may be permitted by law.

**13.** **Governing Law**.  This Agreement will be governed and interpreted in accordance with the internal laws of the Commonwealth of Pennsylvania, without regard to or application of choice of law rules or principles.  With respect to any disputes under this Agreement, I submit to the venue and jurisdiction of the state and Federal courts in Bucks County, Pennsylvania, and waive any claims as to *forum non conveniens* with respect to such courts.

| | Document Name: | Employee Confidentiality |
| --- | --- | --- |
| | Document Number: | HR-50002 |
| | Effective Date: | April 20, 2012 |
| | Page 2 of 5 | |



**14.** **Severability**. I and the Company agree that the scope of the obligations contained in this Agreement are reasonable. In the event that any provision of this Agreement is found to be unenforceable, it is the parties intent that such provision be enforced to the maximum extent permissible under applicable law or removed, and the remainder of this Agreement will remain in full force and effect.

**15.** **No Employment Agreement**. I understand that this Agreement does not constitute an employment contract with the Company and that I am an "at will" member of the Company. Therefore, both the Company and I have the right to terminate the employment relationship at any time, for any reason or no reason, with or without notice and without further financial remuneration to me. This Agreement will be effective as of the first day of my employment by the Company: 12/1/13 _____ _____, _____.

IN WITNESS WHEREOF, the parties hereto have executed this Employment Confidentiality, Non-Competition and Assignment of Invention Agreement effective as of the date referenced in Section 15 above.

**MEMBER : I HEREBY ACKNOWLEDGE THAT I HAVE CAREFULLY READ AND FULLY UNDERSTAND THIS AGREEMENT AND HAVE BEEN GIVEN AN ADEQUATE AMOUNT OF TIME TO REVIEW ITS CONTENTS**

| CENTRAK, INC. | EMPLOYEE: |
|---|---|
| Name: Gideon Naim | Name: Peter Rodrigues |
| Signed: *Gideon Naim* <br> E2E4BFF1FD11425... | Signed: *Peter Rodrigues* <br> B0908BEB88214CD... |
| Date: 12/26/2015 | Date: 12/21/2015 |

| Document Name: | Employee Confidentiality |
|---|---|
| Document Number: | HR-50002 |
| Effective Date: | April 20, 2012 |
| Page 3 of 5 | |

DocuSign Envelope ID: 3F181260-5D87-417C-8057-749B4DFF04EB



**SCHEDULE A**
**Prior Innovations**



**SCHEDULE B**
**Listed Competitors**

Aeroscout
Awarepoint
Ekahua
Innovonics
RF Technologies
Sonitor
Tempsys
Versus
Visonic
Companies that merge with, or acquire the assets or equity of the foregoing, or whose assets or equity the foregoing acquire

Such other competitors that design and/or produce their own RTLS equipment (tags and/or infrastructure) added to the foregoing list by written notice from time to time by CenTrak.

| | |
|---|---|
| Document Name: | Employee Confidentiality |
| Document Number: | HR-50002 |
| Effective Date: | April 20, 2012 |
| Page 5 of 5 | |



Writer's Direct:
Phone: (859) 426-2110
Fax: (859) 788-2011
Email: aswitzer@dbllaw.com

January 7, 2025

**Sent Via Electronic Mail and Regular U.S. Mail**
Commure, Inc.
Attn: Daniel Brian, Chief Legal Counsel (daniel@commure.com) and
Celeste Stephens, Human Resources (cstephens@commure.com)
1300 Terra Bella Ave, Suite 200
Mountain View, CA 94043

> Re:    **Cease and Desist - Notice - Peter Rodrigues, Todd Stewart and Christine Sei's Employee Confidentiality, Non-Competition and Assignment of Invention Agreements with CenTrak, Inc.**

Dear Mr. Brian and Ms. Stephens:

Please be advised that this office represents CenTrak, Inc. ("CenTrak"). I am writing concerning certain obligations to which your current employees, Peter Rodrigues, Todd Stewart, and Christine Sei, previously agreed to in their prior employment with CenTrak. Specifically, Mr. Rodrigues, Mr. Stewart and Ms. Sei each entered into their own respective Employee Confidentiality, Non-Competition and Assignment of Invention Agreement (the "Agreements") with CenTrak.

One of the obligations to which each of these employees agreed is that for a period of one (1) year following his/her termination of employment from CenTrak, regardless of the reason for his/her termination of employment, he/she will not directly or indirectly compete with the business of CenTrak (the "Covenant Not to Compete"). Furthermore, each of these employees agreed that for a period of one (1) year following his/her termination of employment from CenTrak, regardless of the reason for his/her termination of employment, he/she will not solicit either current or prospective customers of CenTrak, nor will he/she solicit employees or agents of CenTrak (the "Covenants Not to Solicit"). Mr. Rodrigues' termination of employment occurred on September 30, 2024. Mr. Stewart's termination of employment occurred on September 27, 2024. Ms. Sei's termination of employment occurred on November 15, 2024. As a result, the Agreements remain in full force and effect. In addition, each of these employees agreed to protect the confidentiality of and to not disclose or use CenTrak's confidential and proprietary information. Those obligations remain fully in effect.

Dressman Benzinger LaVelle psc
Attorneys at Law

CINCINNATI OFFICE:    221 East Fourth Street, Suite 2500, Atrium Two • Cincinnati, Ohio 45202-4100 • Phone: (513) 241-4110 • Fax: (513) 241-4551
COVINGTON OFFICE:    109 East Fourth Street, Covington, Kentucky 41011 • Phone: (859) 341-1881 • Fax: (859) 788-2011
LOUISVILLE OFFICE:    321 West Main Street, Suite 2100, Waterfront Plaza • Louisville, Kentucky 40202-4284 • Phone: (502) 572-2500 • Fax: (502) 572-2503

www.dbllaw.com

Page 2 of 2
January 7, 2025

  Please be advised that CenTrak will enforce its rights under the Agreements to the fullest extent permitted by law, including its right to redress any tortious interference with the Agreements by any third parties.  Please further be advised that, according to the terms of the Agreements, the Covenants Not to Compete and the Covenants Not to Solicit will remain in effect for one year from the date of each of the respective employees' separation of employment with CenTrak, as follows: Mr. Rodrigues (September 30, 2025), Mr. Stewart (September 27, 2025), and Ms. Sei (November 15, 2025).

  CenTrak reserves all rights under the Agreements and all other available rights at law and equity, without limitation or waiver.  Thank you for your attention to these matters.


       Sincerely,


       /s/ Alexis R. Switzer
       Alexis R. Switzer



Writer's Direct:
Phone: (859) 426-2110
Fax: (859) 788-2011
Email: aswitzer@dbllaw.com

January 7, 2025

**Sent Via Electronic Mail and Regular U.S. Mail**
Todd Stewart (tstew22@gmail.com)
496 Sweetgum Lane
Palm Coast, FL 32137

Re:    **Cease and Desist - Notice of Obligations - Employee Confidentiality, Non-Competition and Assignment of Invention Agreement with CenTrak, Inc.**

Dear Mr. Stewart:

Please be advised that this office represents CenTrak, Inc. ("CenTrak"). I am writing concerning the obligations to which you agreed in the Employee Confidentiality, Non-Competition and Assignment of Invention Agreement (the "Agreement") which you executed with CenTrak on January 29, 2020. For your reference, a copy of the Agreement is attached.

One of the obligations to which you agreed is that for a period of one (1) year following your termination of employment from CenTrak, regardless of the reason for your termination of employment, you will not directly or indirectly compete with the business of CenTrak (the "Covenant Not to Compete"). Additionally, you agreed that for a period of one (1) year following your termination of employment from CenTrak, regardless of the reason for your termination of employment, you would not solicit, recruit, or hire any employees of CenTrak, nor would you solicit, divert, or take away, or attempt to solicit, divert or take away the business or patronage of any customers or prospectives customers of CenTrak (the "Covenants Not to Solicit"). Since your termination of employment from CenTrak occurred on September 27, 2024, your Covenant Not to Compete and your Covenants Not to Solicit remain in full force and effect until September 27, 2025. In addition to your Covenant Not to Compete and your Covenants Not to Solicit, you further agreed to protect the confidentiality of and to not disclose or use CenTrak's confidential and proprietary information. Those obligations remain fully in effect.

CenTrak is aware that you are currently employed by Commure, Inc., ("Commure") as National Director of Partnerships & Innovation. Your employment with Commure is in direct violation of the Employee Confidentiality, Non-Competition and Assignment of Invention Agreement. Accordingly, CenTrak hereby provides notice of your obligations under the Agreement and demands that you cease and desist from any further violations of the Agreement. Additionally, CenTrak demands that you cease and desist from using or disclosing any of

Dressman Benzinger LaVelle psc
Attorneys at Law

CINCINNATI OFFICE:    221 East Fourth Street, Suite 2500, Atrium Two • Cincinnati, Ohio 45202-4100 • Phone: (513) 241-4110 • Fax: (513) 241-4551
COVINGTON OFFICE:    109 East Fourth Street, Covington, Kentucky  41011 • Phone:  (859) 341-1881 • Fax:  (859) 788-2011
LOUISVILLE OFFICE:    321 West Main Street, Suite 2100, Waterfront Plaza • Louisville, Kentucky  40202-4284 • Phone:  (502) 572-2500 • Fax:  (502) 572-2503

www.dbllaw.com

Page 2 of 2
January 7, 2025

CenTrak's confidential or proprietary information.  CenTrak has not, and will not, waive any of your obligations, or its rights, under the Agreement.

Because these violations of your agreement may likely become the subject of litigation, we inform you that you have an obligation to preserve any documents, e-mails, electronic files, and other potential information that may be related in any way to such litigation, including, without limitation, hard copy documents and correspondence, as well as Electronically Stored Information ("ESI").  ESI includes, but is not limited to, communications, documents and information stored on computer systems, electronic storage media, back-up tapes, electronic emails, telephone records and logs, word processing documents, spreadsheets, databases, calendars, digital images, Internet usage files, network access information, system servers, stand-alone computers and laptops (including all hard drives), personal digital assistants, voice mails, voice over internet protocols, text messages, and cellular telephones.  Also subject to the preservation obligation are documents and communications in your possession, custody or control relating to your work for CenTrak; compliance or failure to comply with the Agreement; and disclosure or use of CenTrak's confidential and/or trade secret information, and/or any other matter raised herein.

You should refrain from deleting, discarding, or otherwise destroying any documents (including originals, drafts, and copies), ESI and tangible materials related to the matters set forth in this letter.  Also, please note that potentially relevant documents, files, communications, and other information should be preserved and retained in the state and format that they currently exist.  This includes placing a hold on all potentially relevant active and archived files and ceasing all ordinary document destruction and deletion practice.  Copying or manipulation of such files could modify relevant information, and thus result in evidence spoliation.

In the event that you do not comply with the demands herein, please be advised that CenTrak is prepared to enforce its rights under the Agreement to the fullest extent permitted by law.  CenTrak reserves all rights under the Agreement, and all other available rights at law and equity.

If you do not comply with the demands herein within ten (10) days of the date of this letter, CenTrak will do whatever is necessary to protect its business interests.

Sincerely,

/s/ Alexis R. Switzer
Alexis R. Switzer

Enclosure



# CenTrak, Inc. Employee Confidentiality, Non-Competition and Assignment of Invention Agreement

This Employee Confidentiality, Non-Competition and Assignment of Invention Agreement ("Agreement") is by and between CenTrak, Inc. and any of its subsidiaries or affiliates (collectively "CenTrak") and the undersigned employee ("Employee").

NOW, THEREFORE, in consideration of the covenants, terms, and conditions contained in this Agreement, CenTrak and Employee agree as follows:

1.      **CONSIDERATION.** Employee and CenTrak acknowledge and agree that Employee's execution of this Agreement is a condition to Employee's employment with CenTrak. Employee acknowledges and agrees that employment by CenTrak with an opportunity for a payment under CenTrak's various compensation plans constitutes valuable and sufficient consideration for the execution of this Agreement, including the restrictive covenants contained in this Agreement. Employee further acknowledges that CenTrak has a substantial investment in the matters protected by this Agreement, including the confidential information, training, and knowledge supplied or to be supplied to Employee in connection with Employee's employment. Employee acknowledges that Employee has carefully reviewed all of the covenants, terms and conditions of this Agreement, and has been advised to seek independent legal counsel prior to its execution.

2.      **RESTRICTIVE COVENANTS.** In consideration of the covenants, terms and conditions in this Agreement, Employee agrees to the following restrictive covenants:

2.1.    Non-Disclosure of Confidential Information. Employee acknowledges that Employee's position with CenTrak will expose Employee to certain confidential, competitively sensitive and proprietary information of CenTrak including, without limitation, techniques; know how; processes; strategies; systems; databases; applications; programs software; methods of operation; negotiations and contracts; research and development; engineering data; financial information (including financial statements); pricing and cost information and strategies; data regarding sales; employee identity and lists; customer identity and lists; potential customer identity and lists; customer requirements information received from any customer of CenTrak; supplier and vendor identity and lists; training materials; product designs; artist content of productions; marketing information, research and strategies; business plans; projections; programming data; formulas; secret processes; machinery or devices; research projects; strategic plans or other information considered by CenTrak to be confidential, competitively sensitive or proprietary or that is considered a trade secret under applicable law, whether in tangible, electronic or other form or medium ("Confidential Information"). Employee acknowledges that Confidential Information is a valuable, special and unique asset of CenTrak. Employee will not, directly or indirectly, during or at any time after Employee's employment with CenTrak, use Confidential Information or any part of such Confidential Information for Employee's benefit or the benefit of any person, business or entity or disclose Confidential Information or any part of such Confidential Information to any person, business, or entity for any reason or purpose whatsoever, except upon the prior written consent of CenTrak. Employee will not, by any means, transfer or forward outside of CenTrak's computer network any CenTrak information, including, without limitation, Confidential Information, without the prior written consent of the CenTrak. The confidentiality obligations herein shall not prohibit Employee from divulging



**CenTrak, Inc. Employee Confidentiality, Non-Competition and Assignment of Invention Agreement**
Document Number: - HR-50002 | Effective Date: 06/01/2017
Process Owner: Gideon Naim | Title: COO

Confidential Information by order of court or agency of competent jurisdiction or as otherwise required by law; however, Employee shall promptly inform CenTrak of any such situations and shall take reasonable steps to prevent disclosure of Confidential Information until CenTrak has been notified of such required disclosure and has had a reasonable opportunity to seek a protective order. Any such notification to CenTrak shall be made pursuant to Section 8 of this Agreement.

2.2.    Non-Solicitation of Employees and Agents. During the term of this Agreement and for a period of one (1) year after Employee's employment with CenTrak is terminated by either party for any reason or no reason, Employee shall not, directly or indirectly, solicit, encourage or induce or attempt to solicit, encourage or induce, any person who provides services to CenTrak, whether as an employee, consultant, independent contractor or agent, or any entity which provides services to CenTrak under an agency relationship to terminate his, her or its relationship with or services for CenTrak, and shall not, directly or indirectly, either individually or as owner, agent, employee, consultant or otherwise, employ or offer employment to any person, agent or entity that provided services to CenTrak unless such person, agent or entity shall have ceased to provide services to CenTrak, or to have had a legal relationship with CenTrak, for a period of at least six (6) months.

2.3.    Non-Solicitation of Customers and Prospective Customers. During the term of this Agreement and for a period of one (1) year after Employee's employment with CenTrak is terminated by either party for any reason or no reason, Employee will not, directly or indirectly, solicit, contact, or do business with or attempt to solicit or do business with any customer or prospective customer of CenTrak, with respect to activities which compete in whole or in part with the activities of CenTrak. For purposes of this Agreement, "customer" includes any person, business, or entity with whom Employee directly or indirectly had transacted business during Employee's employment with CenTrak. For purposes of this Agreement, "prospective customer" includes any person, business, or entity: (i) that Employee contacted, solicited, or in any way dealt at any time within the twelve (12) month period immediately preceding Employee's termination of employment with CenTrak for the purpose soliciting the sale of goods and/or services of CenTrak; (ii) any person, business, or entity for whom Employee had any direct or indirect responsibility at any time within the twelve (12) month period immediately preceding Employee's termination of employment with CenTrak; and (iii) any person, business, or entity with whom CenTrak, with Employee's direct or indirect participation, had made contact and provided a quote or proposal or had been asked to provide a quote or proposal within the twelve (12) month period immediately preceding Employee's termination of employment with CenTrak.

2.4.    Non-Competition. During the term of this Agreement and for a period of one (1) year after Employee's employment with CenTrak is terminated for any reason, voluntarily or involuntarily, Employee shall not, directly or indirectly on behalf of Employee or any other person, business or entity, compete with CenTrak in the Territory.  For purposes of this Agreement, "compete" means participating in the discovery, reduction to practice, manufacture, management, planning, research, development, or sale of real time locating technology and/or environmental monitoring (including without limitation the monitoring and/or control of temperature, humidity and other environmental conditions) infant, child or adult wander prevention, emergency alert, and/or senior care. For purposes of this Agreement, "Territory" means the United States, and any geographic areas outside of the United States serviced by Employee during the three (3) year period immediately preceding Employee's termination of employment with CenTrak.



2.5.    Return of CenTrak Property and Confidential Information. Immediately upon the termination of Employee's employment with CenTrak for any reason or no reason, Employee shall return to CenTrak all materials (in whatever form or medium, including electronically stored information) comprising or containing any Confidential Information and all other CenTrak Property in Employee's possession or control. Employee shall not retain any copies of any Confidential Information or CenTrak Property. If the CenTrak Property is not returned in good working order, Employee agrees to pay for any necessary repairs. Employee agrees not to remove any CenTrak Property or tangible Confidential Information from CenTrak's premises except as required in the performance of Employee's work for CenTrak. CenTrak Property is subject to inspection by CenTrak at any time without prior notice. For purposes of this Agreement, "CenTrak Property" means any property (i) owned by CenTrak, (ii) situated on CenTrak's premises, or (iii) provided to Employee by CenTrak.

2.6.    Non-Disparagement. Employee will not, at any time, make, publish or communicate to any party or in any public forum any defamatory or maliciously false statements or comments concerning CenTrak or its businesses, employees, board members, and existing and prospective customers, suppliers, and other associated third parties.

## 3.    INVENTIONS

3.1.    Inventions. Employee understands that CenTrak is engaged in a continuous program of research, development, production and marketing and sales in connection with its business and that, as an essential part of employment with CenTrak, Employee may be expected to make new contributions to and create inventions of value for the Company.

3.2.    Disclosure. During the entire course of employment with CenTrak, Employee will fully and promptly disclose to CenTrak all inventions, improvements, designs, techniques, processes, procedures, original works of authorship, computer software programs, trade secrets and other intellectual property ("Inventions"), that are made, conceived, first reduced to practice or created by Employee during the course of employment with CenTrak, either alone or with others. Employee shall assign to CenTrak any prior inventions, except those prior inventions listed in Schedule A which shall not belong to CenTrak (the "Prior Inventions").

3.3.    Assignment of Inventions. Employee acknowledges that copyrightable works prepared by Employee within the scope of Employee's employment are "works for hire" under the United States Copyright Act and that CenTrak will be considered the author of such works. Employee agrees that all Inventions that (a) are developed using equipment, supplies, facilities or trade secrets of CenTrak, (b) result from work performed by Employee for CenTrak, or (c) relate to CenTrak's business, will be the exclusive property of CenTrak and are assigned by Employee to CenTrak. Employee irrevocably assigns to CenTrak all intellectual property rights (including, but not limited to, patents, copyrights, and trademarks) in any such Invention and any right to modify or control such Inventions (also known as "moral rights"). In the event Employee is unable or unwilling to execute any required assignment documents described in this document, Employee hereby authorizes CenTrak to execute such documents on Employee's behalf, to the extent necessary to effectuate such assignments.

3.4.    Assistance. Employee will assist CenTrak in obtaining legal protections for CenTrak's Inventions in any and all countries. Employee will execute any documents that CenTrak may reasonably request for use in obtaining or enforcing any legal protections and intellectual property rights of CenTrak.



4.    **REVOCATION OF AUTHORIZATION**. Immediately upon the termination of Employee's employment with CenTrak for any reason or no reason, Employee is not permitted to access CenTrak's computer network for any purpose. Any and all authorizations for use of CenTrak's computer network are considered revoked as of the termination of Employee's employment with CenTrak. The provisions of this section apply to the computer network of any affiliate or subsidiary of CenTrak.

5.    **IMMUNITY UNDER THE DEFEND TRADE SECRETS ACT OF 2016**.  Employee shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that: (a) is made (i) in confidence to a federal, state, or local government official, either directly or Indirectly, or to an attorney, and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.  Disclosures to attorneys, made under seal, or pursuant to court order are also protected in certain circumstances under said Act.

6.    **REMEDIES.** Employee acknowledges that breach of Sections 2 and/or 3 of this Agreement by Employee will cause CenTrak substantial and irreparable harm, which may not be adequately compensated by damages. In the event of Employee's actual or threatened breach of the provisions of any or all of the terms of this Agreement, CenTrak shall be entitled to obtain equitable relief, including an order requiring Employee to take any affirmative action necessary to effectuate the terms of this Agreement, and enjoining Employee from committing such actual or threatened breach of this Agreement.  Employee agrees and acknowledges that CenTrak is entitled to equitable relief without posting a bond. In addition to these equitable remedies, CenTrak shall also be entitled to recover from Employee all of its legal remedies along with any reasonable attorney's fees, expenses and costs CenTrak incurs in connection with Employee's breach or threatened breach of this Agreement. If any provision or restriction of this Agreement is determined to be unenforceable, the remaining provisions and restrictions shall not be affected by such determination. Employee further acknowledges and agrees that no material or other breach of any contractual or legal duty by CenTrak under this Agreement or otherwise shall be held sufficient to excuse or terminate Employee's obligations under this Agreement or to preclude CenTrak from obtaining injunctive relief.

If a court of competent jurisdiction determines that any provision or restriction in Sections 2 and/or 3 is unreasonable or unenforceable, Employee and CenTrak agree that said court shall modify such restriction or provision so that it becomes a reasonable and enforceable restriction on the activities of Employee. Employee acknowledges and agrees that the restrictions contained in Sections 2 and 3 are reasonable and necessary to protect the legitimate business interests of CenTrak and will not impair Employee's ability to earn a living. Employee further acknowledges and agrees that the restricted periods of time set forth in Section 2 are material terms of this Agreement and that CenTrak is entitled to Employee's full compliance for the entire periods of time. To insure such compliance Employee agrees that the restricted periods of time in Section 2 shall be tolled during any period of time Employee is not in full compliance with such restrictions.

7.    **REPRESENTATION OF EMPLOYEE.** As a material term of this Agreement, Employee makes the following representations to CenTrak:



7.1.    Employee represents that if any confidentiality, non-disclosure, non-solicitation, invention, or non- competition restrictions or limitations exist regarding any prior employment, Employee has fully disclosed to CenTrak those restrictions and limitations and confirmed that Employee's employment with CenTrak will not violate those restrictions or limitations.

7.2.    Employee represents and agrees that following Employee's termination of employment with CenTrak, Employee will disclose to any future employer of Employee the restrictions and terms contained in this Agreement.  Employee further agrees that CenTrak and its successors and assigns may notify any prospective or future employer of Employee of the restrictions and terms contained in this Agreement.

7.3.    Employee represents that following Employee's termination of employment with CenTrak, during any of the restricted periods set forth in Section 2, Employee will immediately notify CenTrak in writing of the identity of any prospective or actual employers of Employee.

8.      **NOTICE.** Any notice to CenTrak under this Agreement shall be in writing and sent postage prepaid via certified mail return receipt requested addressed to:

        CenTrak, Inc.
        826 Newtown-Yardley Road
        Newtown, PA 18940
        ATT: CenTrak Legal, e. legal@centrak.com

9.      **CHOICE OF LAW.** This Agreement shall be governed in all respects whether as to validity, construction, capacity, performance or otherwise by the laws of the Commonwealth of Pennsylvania without regard to conflict of law principles. With respect to any disputes under this Agreement, the parties submit to the venue and exclusive jurisdiction of the Commonwealth and federal courts in Bucks County, Pennsylvania, and waive any claims as to forum non-convenience with respect to such courts.

10.     **WAIVER OF JURY TRIAL**.  THE PARTIES EXPRESSLY WAIVE THE RIGHT TO TRIAL BY JURY IN ANY PROCEEDING BROUGHT BY OR AGAINST THEM RELATING TO THIS AGREEMENT

11.     **MISCELLANEOUS.** This Agreement shall bind and inure to the benefit of the parties and their respective legal representatives and estate, except as otherwise provided in this Agreement. This Agreement is personal to Employee, and Employee may not assign Employee's rights (or delegate Employee's duties) under this Agreement without the prior written consent of CenTrak. CenTrak may assign all of its rights under this Agreement to its successors and assigns. No amendments, modifications, alterations, or additions to this Agreement shall be binding unless made in writing and signed by CenTrak and Employee. The failure of any party to enforce a breach of this Agreement shall not be construed as a waiver of the right to enforce any other breach. The parties stipulate and agree that each and every paragraph, sentence, term, and provision of this Agreement shall be considered independent, reasonable, and severable. The invalidity or unenforceability of any particular provision of this Agreement shall not affect the other provisions of it; and this Agreement shall be construed in all respects as if such invalid or unenforceable provision was omitted.  This Agreement constitutes the entire agreement of the parties concerning the subject matter of this Agreement, with all prior negotiations and agreements concerning the subject matter of this Agreement, whether written or oral, being replaced and superseded by this Agreement, except that any agreement relating to inventions or



intellectual property signed by Employee shall remain in effect.

12.    **BRIBERY AND CORRUPTION.** As a member of the Halma™ family of companies, CenTrak adheres to the Halma™ Bribery and Corruption Policy Statement (the "B&C Policy"), which may be found at:

http://www.halma.com/about-halma/code-of-conduct//~/media/Files/H/Halma-Plc-V2/about-us/code-of- conduct/halma-code-of-conduct-sep-2011-a4.pdf.

In accordance with the B&C policy, CenTrak has a zero-tolerance policy towards any bribery or corrupt practices in its business dealings. Honoring the spirit and letter of this policy is expected, despite what may be locally acceptable business practice or convention. Employee represents and warrants that Employee has not engaged in business practices, which violate the B&C Policy or any applicable local, state, federal and foreign laws, orders, rules and regulations regarding bribery and corruption. Employee shall remain in compliance with this clause during the term of this Agreement and while conducting any business dealings with, or on behalf of CenTrak. In addition, CenTrak expects those with whom it does business to disclose any coercion by others that may be in violation of the law. In the event that CenTrak determines, in its reasonable sole discretion, that Employee has breached this clause, CenTrak may terminate this Agreement and any other agreement with Employee without penalty and without any compensation to Employee. Employee shall indemnify and hold CenTrak harmless for all claims, demands, damages, costs, fines, penalties, reasonable attorney's fees, and all other expenses arising from failure of the Employee to comply with this clause.

IN WITNESS WHEREOF, intending to be legally bound, the parties have entered into this Agreement effective as of the date signed by the Employee.

**CENTRAK, INC.**

By:    _____

Printed:    _____

Title:    _____

Date:    _____

**EMPLOYEE**

Name:    *Todd Stewart*

Printed:    Todd Stewart

Date:    29 January 2020



**CenTrak, Inc. Employee Confidentiality, Non-Competition and Assignment of Invention Agreement**
Document Number: - HR-50002 | Effective Date: 06/01/2017
Process Owner: Gideon Naim | Title: COO

## **Schedule A**
Prior Innovations