# EXHIBIT F



**SPECTOR GADON ROSEN VINCI** P.C.

Attorneys at Law

sgrvlaw.com

ZACHARY C. GLASER

Direct Dial Number
215.241.8833
Direct Fax Number
215-241-8844
zglaser@sgrvlaw.com

** Please reply to the
Philadelphia Office

**Philadelphia Office**
Seven Penn Center
1635 Market Street
7th floor
Philadelphia, PA 19103
P 215.241.8888
F 215.241.8844

**New Jersey Office**
One Greentree Centre
10000 Lincoln Drive
Suite 201
Marlton, NJ 08053
P 856.988.5490
F 856.722.5344

Admitted to practice:
PA, NJ

May 30, 2025

**VIA ELECTRONIC MAIL**

Commure, Inc.
Attn:    Daniel Brian, Chief Legal Counsel (daniel@commure.com)
         Celeste Stephens, Human Resources (cstephens@commure.com)

**Re:    NOTICE OF IMPENDING LITIGATION**

Dear Mr. Brian and Ms. Stephens:

Our firm has been engaged by CenTrak, Inc. ("CenTrak") to commence litigation against Commure, Inc. ("Commure") and four former CenTrak employees currently working for Commure:  Peter Rodrigues, Todd Stewart, Christine Sei, and Anthony Fierro (collectively, the "Former Employees"). In January, prior counsel for CenTrak sent cease-and-desist letters to you and the Former Employees, which were ignored.  We were not simply engaged to investigate and assess the risks associated with your employees' continued misconduct and to put you on notice of the potential claims; we are litigation counsel engaged for the purpose of drafting and filing a formal Complaint in Pennsylvania against Commure in which the Former Employees will also be named defendants.

Do not ignore this letter, as the consequences related to your continued willful ignorance will be much more severe at this juncture.

**Factual Background**

At the end of 2024, Messrs. Rodrigues and Stewart, and Ms. Sei, resigned from CenTrak and each represented – either in their exit interviews or in informal discussions – that they were not joining a competitor or engaging in any work related to CenTrak's Real-Time Location Services (RTLS) offerings. Based on these assurances, CenTrak had no immediate reason to suspect any breach of their CenTrak employee agreements at that time.

However, by January 2025, CenTrak became aware of credible rumors that Rodrigues, Stewart, and Sei were actively engaging with and supporting Commure's Strongline product – a direct RTLS competitor – and Commure had hired a fourth sales employee from CenTrak, Anthony Fierro. At that time, multiple cease-and-desist letters were sent to the Former Employees individually and to Commure, which reminded everyone of the restrictions in place and the Former Employees' obligations to CenTrak thereunder.

May 30, 2025
Page 2

Although neither Commure nor any of the Former Employees formally responded to CenTrak's previous letters, CenTrak received informal assurances from the Former Employees that they were only involved with non-Strongline products at Commure, leading CenTrak to believe that they were not actually competing with RTLS's offerings. As such, CenTrak did not feel any action was necessary at that time, regardless of Commure's silence.

Unfortunately, more recent information received by CenTrak has revealed that the silence was not out of Commure's deference to the Agreements or an understanding that no improper competition was taking place. To the contrary, CenTrak has received information in March and April of 2025 that irrefutably proves Commure's illegal competition through the Former Employees. Among other things:

- Fierro was seen representing himself as "Enterprise Sales Director, Strongline" at industry trade shows;

- Rodrigues and Stewart have contacted CenTrak clients they previously worked with in attempts to improperly convert those accounts to Strongline and Commure; and

- CenTrak has found itself at risk of losing significant clients and key strategic partners directly tied to the Former Employees' work prior to their leaving for Commure.

It is now clear that the Former Employees are actively soliciting CenTrak customers and partners and promoting Commure's Strongline product in direct contravention of their obligations to CenTrak, and direct action is required.

**Former Employees' Violations of Their Employment Agreements**

Each of CenTrak's former employees working for Commure is subject to a valid Employee Confidentiality, Non-Competition, and Assignment of Invention Agreement (the "Agreement") that prohibits them, for one (1) year following the termination of their employment with CenTrak, from:

- Directly or indirectly competing with the business of CenTrak;

- Soliciting any current or prospective customers of CenTrak; and

- Soliciting any employees or agents of CenTrak.

Copies of each employee's Agreement are attached hereto collectively as Exhibit A.

CenTrak negotiated these restrictions into the Agreement for the legitimate business interest of protecting the proprietary and confidential information that has made it so successful in the RTLS market. This information includes, but is not limited to: (1) the Former Employees' deep proprietary knowledge of CenTrak's RTLS platform, including its sales strategies, pain points, and key differentiators; (2) their knowledge of CenTrak's key customer contacts, renewal timelines, pricing, and customer dissatisfaction issues; and (3) their understanding of and relationships with CenTrak's strategic distribution and technology partners.

By employing these individuals, armed with CenTrak insider knowledge, Commure is trying to exploit CenTrak's most sensitive business information and client vulnerabilities to accelerate its position in the market. This actionable conduct not only violates the Former Employees' individual employment agreements but also constitutes intentional interference with contractual relations and misappropriation of confidential business information. My office continues its investigation to determine the full extent of this malfeasance and identify all legal and equitable claims to be raised on CenTrak's behalf.

## DEMAND FOR IMMEDIATE ACTION

In light of the egregious wrongdoing discussed above, CenTrak demands that Commure immediately:

1. **Cease and desist from employing Pete Rodrigues, Todd Stewart, Christine Sei, and Anthony Fierro in any roles involving the marketing, sale, or development of Commure's Strongline product or any other RTLS-related offerings;**

2. **Cease all solicitations and marketing to Centrak's current or former clients that have been in contact with those individuals;**

3. **Preserve all documents, communications, electronic files, and all other potential information that may be related in any way to the litigation discussed in this letter, including, without limitation, hard copy documents and correspondence, along with Electronically Stored Information ("ESI") for potential litigation discovery; and**

May 30, 2025
Page 4

**4. Provide full written assurance of your full compliance with these demands by no later than <u>June 9, 2025</u>.**

If we do not receive full compliance with the above demands by the June 9 deadline established above, we will proceed with the filing of suit against Commure and each of the individual employees. We will seek injunctive relief, damages, attorneys' fees, and all other available legal and equitable remedies.

## <u>NOTICE OF LITIGATION HOLD REQUIREMENTS</u>

Based on the foregoing discussion, **you should consider yourself under threat of pending litigation**, which gives rise to an obligation to preserve potentially relevant documents and data. Preservation includes, but is not limited to, not concealing, or not altering any paper or electronic files and other data generated by and/or stored on laptops, hard drives, phones, tablets, printers, storage media, and/or any other electronic device that has the ability to connect to cellular data and/or the internet. Preservation also includes, but is not limited to, not destroying, not concealing, or not altering the electronic devices such as laptops, hard drives, phones, tablets, printers, storage media and/or any other electronic device that has the ability to connect to cellular data and/or internet that is owned, possessed, or has been used by you, your agents, and/or representatives.

You should anticipate that much of the information subject to disclosure, responsive to formal discovery requests, and/or evidence in this matter is stored on your current and former computer systems, as well as other media devices, including, but not limited to, personal digital devices, voice-messaging systems, online repositories, and cell phones.

The term ESI as used herein should be afforded the broadest possible definition. It includes (by way of example and not as an exclusive list) potentially relevant information electronically, magnetically, digitally, or optically stored as:

a. Digital or analog communications, both sent and received, whether internally or externally;

b. Digital or analog electronic files, including "deleted" files and file fragments, stored in machine-readable format on magnetic, optical, or other storage media, including thumb drives, hard drives, floppy disks used by your computers and their backup media (e.g., other hard drives, backup tapes, flash drives, thumb drives, dongles, floppies, cartridges, CD-ROMs, DVDs) or otherwise, whether such files have been reduced to paper printouts or not;

May 30, 2025
Page 5

   c.   Word processed documents (e.g., Word or WordPerfect documents and drafts), including drafts and revisions in their native format.

   d.   Spreadsheets and tables (e.g., Table or Lotus 123 worksheets), including drafts and revisions in their native form;

   e.   Accounting Application Data (e.g., QuickBooks, Money, Peachtree data files);

   f.   Image and Facsimile Files (e.g., PDF, .tiff, .jpg, .gif images);

   g.   Sound Records (e.g., .wav and .mp3 files);

   h.   Video and Animation Files (e.g., .avi and .mov files);

   i.   Databases (e.g., Access, Oracle, SQL Server data, SAP);

   j.   Contact and Relationship Management Data (e.g., Outlook, ACT);

   k.   Calendar, Task Management, Diary Application Data, and personal information management (e.g., Outlook PST, Yahoo, blog tools, Lotus Notes);

   l.   Online Access Data, including Internet and Web-browser-generated history files, caches, temporary internet files, and "cookies" files generated on any and all backup storage media;

   m.   Data created with the use of paper and electronic mail logging and routing software;

   n.   Presentations or slide shows (e.g., PowerPoint, Corel Presentations);

   o.   Network Access and Server Activity Logs;

   p.   Project Management Application Data, including graphs, charts, and other data;

   q.   Computer Aided Design/Drawing Files, including drafts and revisions; and

   r.   Back-up and Archival Files (e.g., Zip, .GHO).

ESI resides not only in areas of electronic, magnetic, and optical storage media reasonably accessible to you, but also in areas you may deem not

reasonably accessible. You are obliged to preserve potentially relevant evidence from both these sources of ESI, even if you do not anticipate producing such ESI.

During the above-referenced litigation you should anticipate that, for good cause shown, the Court may order production of ESI, even if you find that it is not reasonably accessible. Accordingly, you are advised that even ESI you deem reasonably inaccessible must be preserved in the interim so as not to deprive VSI of its right to secure the evidence or the court of its right to adjudicate the issue.

### Preservation Requires Immediate Attention

You must act immediately to preserve potentially relevant ESI including, without limitation, through the date of this demand and going forward:

a. All documents, communications, and ESI pertaining to Commure's hiring of the Former Employees;

b. All documents, communications, and ESI pertaining to any CenTrak client matters accessed, copied, or deleted by the Former Employees while they were CenTrak employees;

c. All documents, communications, and ESI pertaining to any sales completed by the Former Employees on Commure's behalf; and

d. All documents, communications, and ESI pertaining to the Former Employees' roles and performance at Commure.

You are advised that adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence. You must also intervene to prevent loss due to routine operations and employ proper techniques and protocols suited to the protection of ESI. You are also advised that sources of ESI are altered and erased by continued use of computers and other devices. For example, booting a drive, examining its contents, or running any application may irretrievably alter the evidence it contains and may result in the unlawful spoliation of evidence. Therefore, alteration and erasure may result from your failure to act diligently and responsibly to prevent loss or corruption of ESI.

Nothing in this demand for preservation of ESI should be understood to diminish your concurrent obligation to preserve documents, tangible things, and other potentially relevant evidence.

May 30, 2025
Page 7

**Suspension of Routine Destruction**

You are directed to immediately initiate a litigation hold for potentially relevant ESI, documents, and tangible things, and to act diligently and in good faith to secure and audit compliance with such litigation hold. You must immediately identify and modify or suspend features of information systems and devices that, in routine operation, operate to cause the loss of potentially relevant ESI. Examples of such features and operations include:

a.    Purging the contents of e-mail repositories by age, capacity, or other criteria;

b.   Using data or media wiping, disposal, erasure, or encryption utilities or devices;

c.   Overwriting, erasing, destroying, or discarding back-up media;

d.   Re-assigning, re-imaging, or disposing of systems, servers, devices, or media;

e.   Running antivirus or other programs affecting wholesale metadata alteration;

f.   Releasing or purging online storage repositories;

g.   Using metadata stripper utilities;

h.   Disabling server or IM logging; and

i.   Executing drive or file defragmentation or compression programs.

**Preservation in Native Form**

Certain ESI, including but not limited to spreadsheets and databases, will be sought in the form or forms in which it is ordinarily maintained. Accordingly, you should preserve ESI in such native forms and should not select methods to preserve ESI that remove or degrade the ability to search his ESI by electronic means or make it difficult or burdensome to access or use the information efficiently in the litigation.

## Metadata

You should anticipate the need to disclose and produce system and application metadata and should act to preserve it. System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location, and dates of creation and last modification or access. Application metadata is information automatically included or embedded in electronic files, but which may not be apparent to a user, including deleted content, draft language, commentary, collaboration and distribution data, and dates of creation and printing. You are advised that metadata may be overwritten or corrupted by careless handling or improper steps to preserve ESI. For electronic mail, metadata includes all header routing data and Base 64 encoded attachment data, in addition to the To, From, Subject, Received Date, CC, and BCC field.

## Ancillary Preservation

You are instructed to preserve documents and other tangible items that may be required to access, interpret, or search potentially relevant ESI, including logs, control sheets, specifications, indices, naming protocols, file lists, network diagrams, flow charts, instruction sheets, data entry forms, abbreviation keys, user ID and password rosters or the like. These documents, whether kept in paper or electronic form, must be preserved, as well as all copies of the backup tapes and the software necessary to reconstruct the data on those tapes, so that there can be made a complete bit-by-bit "mirror" evidentiary image copy of the storage media of each and every personal computer (and/or workstation) and server in your control and custody, as well as image copies of all hard drives retained that are no longer in service.

You are instructed to preserve passwords, keys, or other authenticators required to access encrypted files or run applications, along with the installation disks, user manuals, and license keys for applications required to access ESI.

You are instructed to preserve any cabling, drivers, and hardware, other than a standard 3.5" floppy disk drive or standard CD or DVD optical disk drive, if needed to access or interpret media on which ESI is stored. This includes tape drives, bar code readers, Zip drives, and other legacy or proprietary devices.

May 30, 2025
Page 9

### Paper Preservation of ESI is Inadequate

As hard copies do not preserve electronic searchability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions. If information exists in both electronic and paper forms, you should preserve both forms.

### Agents and Third Parties

Your preservation obligation extends beyond ESI in your care, possession, or custody and includes ESI in the custody of others associated with you, such as your spouse, representatives and/or agents. Accordingly, you are instructed to notify your spouse, representative and/or agents or any other individual in possession of potentially relevant ESI to preserve such ESI to the full extent of your obligation to do so, and you must take reasonable steps to secure their compliance.

### Forensically Sound Imaging

As we anticipate the need for forensic examination of one or more of these systems and the presence of relevant evidence in forensically accessible areas of the drives. We demand that you employ forensically sound ESI preservation methods. Failure to use such methods poses a significant threat of spoliation and data loss. By "forensically sound" we mean duplication, for purposes of preservation, of all data stored on the evidence media while employing a proper chain of custody and using tools and methods that make no changes to the evidence and support authentication of the duplicate as a true and complete bit-for-bit image of the original. A forensically sound preservation method guards against changes to metadata evidence and preserves all parts of the electronic evidence, including in the so-called "unallocated clusters," holding deleted files.

### Preservation Protocols

It is my intent to work with you, your attorney, and/or a person acting on your behalf by virtue of a valid Power of Attorney, to form an agreement regarding an acceptable protocol for forensically sound preservation.

### Do Not Delay Preservation

I am available to discuss reasonable preservation steps with your attorney; however, you should not defer preservation steps pending our discussions if ESI will be lost or corrupted as a consequence of delay. If the failure to preserve potentially relevant evidence results in the corruption, loss, or delay in the

May 30, 2025
Page 10

production of evidence to which we are entitled, such failure would constitute spoliation of evidence, for which our client and we will not hesitate to seek sanctions.

**Certification of Compliance & Notice of Further Proceedings**

Please confirm, or have your counsel confirm, by Friday, June 6, 2025, that you have taken the steps outlined in this letter to ensure the preservation of ESI and tangible documents potentially relevant to this lawsuit. If no steps have been undertaken to comply with the preservation described above, or other actions have been taken, please have counsel describe what has been done to preserve potentially relevant evidence.

\*       \*       \*       \*       \*

**As noted above, if we do not receive the confirmations requested above by close of business on Friday, June 9, 2025, we have been directed to pursue legal action against you, the Former Employee copied on this letter, and any other individuals or entities that aided or assisted you in your improper competition.**

We appreciate your prompt attention to these matters.

Sincerely,

SPECTOR GADON ROSEN VINCI P.C.

By:_____
        Zachary C. Glaser, Esq.

cc:  Peter Rodrigues (rodrigues.pete@gmail.com)
     Todd Stewart (tstew22@gmail.com)
     Anthony Fierro (tbillsjr@yahoo.com)
     Christine Sei (cchadwi@hotmail.com)

# EXHIBIT A



## EMPLOYEE CONFIDENTIALITY, NON-COMPETITION AND ASSIGNMENT OF INVENTION AGREEMENT

In consideration of my employment with CenTrak, a Delaware corporation (the "Company", "you" or "we"), I agree with the Company as follows:

    **1.**     **Company Business**. I understand that the Company is engaged in a continuous program of research, development, production and marketing in connection with its Business and that, as an essential part of my employment with the Company, I may be expected to make new contributions to and create inventions of value for the Company. For purposes of this agreement, "Business" shall mean the design, manufacture or sale of real-time location or tracking equipment, or such other business as the Company may enter into, or contemplate entering into, in the future.

    **2.**     **Disclosure of Inventions**. Following the date I first become an employee and during the entire course of my employment with the Company, I will fully and promptly disclose to the Company all inventions, improvements, designs, techniques, processes, procedures, original works of authorship, computer software programs, trade secrets and other intellectual property ("Inventions"), that are made, conceived, first reduced to practice or created by me, either alone or with others. I shall assign to the Company any prior inventions, except those prior inventions listed in Schedule A which shall not belong to the Company (the "Prior Inventions").

    **3.**     **Assignment of Inventions**. I acknowledge that copyrightable works prepared by me within the scope of my employment are "works for hire" under the United States Copyright Act and that the Company will be considered the author of such works. I agree that all Inventions that (a) are developed using equipment, supplies, facilities or trade secrets of the Company, (b) result from work performed by me for the Company, or (c) relate to the Company's Business, will be the exclusive property of the Company and are assigned by me to the Company. I irrevocably assign to the Company all intellectual property rights (including, but not limited to, patents, copyrights, trademarks) in any such Invention and any right to modify or control such Inventions (also known as "moral rights"). In the event I am unable or unwilling to execute any required assignment documents described in this document, I hereby authorize the Company to execute such documents on my behalf, to the extent necessary to effectuate such assignments.

    **4.**     **Assistance**. I will assist the Company in obtaining legal protections for the Company's Inventions in any and all countries. I will execute any documents that the Company may reasonably request for use in obtaining or enforcing any legal protections and intellectual property rights of the Company.

    **5.**     **Proprietary Information**. I understand that my employment by the Company creates a relationship of confidence and trust with respect to any information of a confidential nature that may be disclosed to me by the Company that relates to the business of the Company (such as Inventions, marketing plans, product plans, business strategies, financial information, forecasts, personnel information and customer lists), or its affiliates, customers or suppliers ("Proprietary Information"). During and after my employment, I will keep all Proprietary Information confidential, and I will only disclose Proprietary Information, when properly authorized to do so, in performing my duties as a member of the Company.

    **6.**     **Surrender of Company Property.** Upon termination of my employment with the Company, for whatever reason, or upon any request from the Company, I will promptly surrender to the Company all files, documents, letters, memoranda, records, data, models, computer equipment or devices, computer programs, or any other written, photographic, or tangible materials containing Proprietary Information, and any copies thereof, and any other Company property in my possession, custody or control. I will not retain, take with me, use or pass on, directly or through any other individual or entity, any such materials or copies thereof or any other Company property. All such materials and copies thereof and any other Company property shall be and are the exclusive property of the Company to be used by me only in the performance of my duties for the Company and shall not be copied or removed from Company premises except in the pursuit of authorized Company business. I further agree to promptly return all equipment provided to me by the Company for use during my employment and understand that I have no right to retain any such equipment for any reason whatsoever.

    **7.**     **Confidentiality**. At all times, both during my employment and after its termination, I will keep and hold all such Proprietary Information in strict confidence and trust, and I will not use or disclose any of such Proprietary Information without the prior written consent of the Company, except as may be necessary to perform my duties as an employee of the Company for the benefit of the Company. Upon termination of my employment with the Company, I will promptly deliver to the Company all documents and materials of any nature pertaining to my work with the Company and I will not take with me any documents or materials or copies thereof containing any Proprietary Information. The obligations contained in this Agreement shall be supplementary to and in no way deemed a limitation of the Company's rights as they may otherwise exist pursuant to

| Document Name: | Employee Confidentiality |
|---|---|
| Document Number: | HR-50002 |
| Effective Date: | April 20, 2012 |
| Page 1 of 5 | |

DocuSign Envelope ID: 3F481260-5D87-4179-8987-748D4DFF04EB

applicable law. It is my intention to provide the Company with the greatest protection of its confidential information as is permitted by law.

**8.** **No Breach of Prior Agreement**. The performance of my duties as an employee of the Company will not breach any invention assignment, proprietary information or similar agreement with any former employer or other party and I will not use in the performance of my duties any documents or materials of a former employer that are not generally available to the public or have not been legally transferred to the Company.

**9.** **Duty Not to Compete**.

(a)  During my employment at the Company and for a period of one (1) year after the termination of that employment, I will not, without the Company's express written consent, directly or indirectly engage in any consulting, employment with one of the Listed Competitors (as defined in Schedule B) or any other business that is "competitive" with the Company or assist others in any business that is "competitive" with the Company.  A company shall be considered "competitive" with the Company if such company engages in the Business.

(b)  I and the Company agree that the scope of the obligations contained in Section 9(a) of this Agreement are reasonable. However, should a court of competent jurisdiction ever find any of the provisions of Sections 9(a) to be invalid or unenforceable, I and the Company agree that such provisions shall be enforced to the fullest extent permitted by law. If the provision found to be invalid or unenforceable cannot be enforced as written, I and the Company agree that the provision shall be read to provide the Company with the greatest protection of its legitimate business interests permitted by applicable law.

**10.** **Non-Solicitation/Non-Interference.**

(a)  During my employment at the Company and for a period of one (1) year after the termination of that employment, regardless of the reason for such termination, I agree that I will not:

(i) recruit, solicit, or hire, or assist others in recruiting, soliciting or hiring, any past or present members, director, employee, contractor or other business associate (collectively each a "Business Relation") or otherwise induce any Business Relation to terminate or cease his/her employment or other business relationship with the Company.  The term Business Relation shall include those individuals or entities who were employed, engaged or associated with the Company during my employment, but shall not include any individual who has not had any business relationship with the Company for a period of six consecutive months at the time of the recruiting, solicitation or hiring.

(ii)  solicit, divert, or take away, or attempt to solicit, divert or take away the business or patronage or any of the clients, customers, business contacts or accounts, or prospective clients, customers or accounts of the Company which are or were contacted, solicited, or served by the Company.  For the purposes of this agreement the term "prospective client, customer or accounts" shall include those individuals and/or entities with which the Company has had contact.

(b)  I understand and agree that situations may arise in the future that require you to let my future employers know about my responsibilities under this Agreement and hereby authorize the Company to disclose the existence of the restrictions contained in this Agreement to all third parties the Company deems appropriate to protect its legitimate business interests.

**11**.  **Name & Likeness Rights, Etc.**. The Company may use my name and biographical information in any media during my employment for any business purpose.

**12.**  **Non-Monetary Relief**. I understand that in the event of a breach or threatened breach of this Agreement by me the Company may suffer irreparable harm and will therefore be entitled to non-monetary relief (also known as injunctive relief) to enforce this Agreement, without in any way limiting the Company's rights to seek all such other relief as may be permitted by law.

**13.**  **Governing Law**. This Agreement will be governed and interpreted in accordance with the internal laws of the Commonwealth of Pennsylvania, without regard to or application of choice of law rules or principles. With respect to any disputes under this Agreement, I submit to the venue and jurisdiction of the state and Federal courts in Bucks County, Pennsylvania, and waive any claims as to *forum non conveniens* with respect to such courts.

| | |
|---|---|
| Document Name: | Employee Confidentiality |
| Document Number: | HR-50002 |
| Effective Date: | April 20, 2012 |
| Page 2 of 5 | |

DocuSign Envelope ID: 3F481260-5D87-417C-8987-748B1DFF04FB



14.    **Severability**.  I and the Company agree that the scope of the obligations contained in this Agreement are reasonable.  In the event that any provision of this Agreement is found to be unenforceable, it is the parties intent that such provision be enforced to the maximum extent permissible under applicable law or removed, and the remainder of this Agreement will remain in full force and effect.

15.    **No Employment Agreement**.  I understand that this Agreement does not constitute an employment contract with the Company and that I am an "at will" member of the Company. Therefore, both the Company and I have the right to terminate the employment relationship at any time, for any reason or no reason, with or without notice and without further financial remuneration to me.    This Agreement will be effective as of the first day of my employment by the Company: ~~12/1/13~~ _____, _____.

IN WITNESS WHEREOF, the parties hereto have executed this Employment Confidentiality, Non-Competition and Assignment of Invention Agreement effective as of the date referenced in Section 15 above.

**MEMBER :  I HEREBY ACKNOWLEDGE THAT I HAVE CAREFULLY READ AND FULLY UNDERSTAND THIS AGREEMENT AND HAVE BEEN GIVEN AN ADEQUATE AMOUNT OF TIME TO REVIEW ITS CONTENTS**

| CENTRAK, INC. | EMPLOYEE: |
|---|---|
| Name:   Gideon Naim | Name:    Peter Rodrigues |
| Signed:   *Gideon Naim* <br> E2E4BFF1FD11425... | Signed:   *Peter Rodrigues* <br> B0908BEB88214CD... |
| Date:   12/26/2015 | Date:   12/21/2015 |

| Document Name: | Employee Confidentiality |
|---|---|
| Document Number: | HR-50002 |
| Effective Date: | April 20, 2012 |
| Page 3 of 5 | |

DocuSign Envelope ID: 3F181260-5D87-417C-8087-749B4DFF04FB



**SCHEDULE A**
**Prior Innovations**

| Document Name: | Employee Confidentiality |
|---|---|
| Document Number: | HR-50002 |
| Effective Date: | April 20, 2012 |
| Page 4 of 5 | |



**SCHEDULE B**
**Listed Competitors**

Aeroscout
Awarepoint
Ekahua
Innovonics
RF Technologies
Sonitor
Tempsys
Versus
Visonic
Companies that merge with, or acquire the assets or equity of the foregoing, or whose assets or equity the foregoing acquire


Such other competitors that design and/or produce their own RTLS equipment (tags and/or infrastructure) added to the foregoing list by written notice from time to time by CenTrak.

| Document Name: | Employee Confidentiality |
|---|---|
| Document Number: | HR-50002 |
| Effective Date: | April 20, 2012 |
| Page 5 of 5 | |



# CenTrak, Inc. Employee Confidentiality, Non-Competition and Assignment of Invention Agreement

This Employee Confidentiality, Non-Competition and Assignment of Invention Agreement ("Agreement") is by and between CenTrak, Inc. and any of its subsidiaries or affiliates (collectively "CenTrak") and the undersigned employee ("Employee").

NOW, THEREFORE, in consideration of the covenants, terms, and conditions contained in this Agreement, CenTrak and Employee agree as follows:

1.    **CONSIDERATION.** Employee and CenTrak acknowledge and agree that Employee's execution of this Agreement is a condition to Employee's employment with CenTrak. Employee acknowledges and agrees that employment by CenTrak with an opportunity for a payment under CenTrak's various compensation plans constitutes valuable and sufficient consideration for the execution of this Agreement, including the restrictive covenants contained in this Agreement. Employee further acknowledges that CenTrak has a substantial investment in the matters protected by this Agreement, including the confidential information, training, and knowledge supplied or to be supplied to Employee in connection with Employee's employment. Employee acknowledges that Employee has carefully reviewed all of the covenants, terms and conditions of this Agreement, and has been advised to seek independent legal counsel prior to its execution.

2.    **RESTRICTIVE COVENANTS.** In consideration of the covenants, terms and conditions in this Agreement, Employee agrees to the following restrictive covenants:

2.1.    Non-Disclosure of Confidential Information. Employee acknowledges that Employee's position with CenTrak will expose Employee to certain confidential, competitively sensitive and proprietary information of CenTrak including, without limitation, techniques; know how; processes; strategies; systems; databases; applications; programs software; methods of operation; negotiations and contracts; research and development; engineering data; financial information (including financial statements); pricing and cost information and strategies; data regarding sales; employee identity and lists; customer identity and lists; potential customer identity and lists; customer requirements information received from any customer of CenTrak; supplier and vendor identity and lists; training materials; product designs; artist content of productions; marketing information, research and strategies; business plans; projections; programming data; formulas; secret processes; machinery or devices; research projects; strategic plans or other information considered by CenTrak to be confidential, competitively sensitive or proprietary or that is considered a trade secret under applicable law, whether in tangible, electronic or other form or medium ("Confidential Information"). Employee acknowledges that Confidential Information is a valuable, special and unique asset of CenTrak. Employee will not, directly or indirectly, during or at any time after Employee's employment with CenTrak, use Confidential Information or any part of such Confidential Information for Employee's benefit or the benefit of any person, business or entity or disclose Confidential Information or any part of such Confidential Information to any person, business, or entity for any reason or purpose whatsoever, except upon the prior written consent of CenTrak. Employee will not, by any means, transfer or forward outside of CenTrak's computer network any CenTrak information, including, without limitation, Confidential Information, without the prior written consent of the CenTrak. The confidentiality obligations herein shall not prohibit Employee from divulging



Confidential Information by order of court or agency of competent jurisdiction or as otherwise required by law; however, Employee shall promptly inform CenTrak of any such situations and shall take reasonable steps to prevent disclosure of Confidential Information until CenTrak has been notified of such required disclosure and has had a reasonable opportunity to seek a protective order. Any such notification to CenTrak shall be made pursuant to Section 8 of this Agreement.

2.2.    Non-Solicitation of Employees and Agents. During the term of this Agreement and for a period of one (1) year after Employee's employment with CenTrak is terminated by either party for any reason or no reason, Employee shall not, directly or indirectly, solicit, encourage or induce or attempt to solicit, encourage or induce, any person who provides services to CenTrak, whether as an employee, consultant, independent contractor or agent, or any entity which provides services to CenTrak under an agency relationship to terminate his, her or its relationship with or services for CenTrak, and shall not, directly or indirectly, either individually or as owner, agent, employee, consultant or otherwise, employ or offer employment to any person, agent or entity that provided services to CenTrak unless such person, agent or entity shall have ceased to provide services to CenTrak, or to have had a legal relationship with CenTrak, for a period of at least six (6) months.

2.3.    Non-Solicitation of Customers and Prospective Customers. During the term of this Agreement and for a period of one (1) year after Employee's employment with CenTrak is terminated by either party for any reason or no reason, Employee will not, directly or indirectly, solicit, contact, or do business with or attempt to solicit or do business with any customer or prospective customer of CenTrak, with respect to activities which compete in whole or in part with the activities of CenTrak. For purposes of this Agreement, "customer" includes any person, business, or entity with whom Employee directly or indirectly had transacted business during Employee's employment with CenTrak. For purposes of this Agreement, "prospective customer" includes any person, business, or entity: (i) that Employee contacted, solicited, or in any way dealt at any time within the twelve (12) month  period immediately preceding Employee's  termination  of employment with CenTrak for the purpose soliciting the sale  of goods and/or services of CenTrak; (ii) any person, business, or entity for whom Employee had any direct or indirect responsibility at any time within the twelve (12) month period immediately preceding Employee's termination of employment with CenTrak; and (iii) any person, business, or entity with whom CenTrak, with Employee's direct or indirect participation, had made contact and provided a quote or proposal or had been asked to provide a quote or proposal within the twelve (12) month period immediately preceding Employee's termination of employment with CenTrak.

2.4.    Non-Competition. During the term of this Agreement and for a period of one (1) year after Employee's employment with CenTrak is terminated for any reason, voluntarily or involuntarily, Employee shall not, directly or indirectly on behalf of Employee or any other person, business or entity, compete with CenTrak in the Territory.   For purposes of this Agreement, "compete" means participating in the discovery, reduction to practice, manufacture, management, planning, research, development, or sale of real time locating technology and/or environmental monitoring (including without limitation the monitoring and/or control of temperature, humidity and other environmental conditions) infant, child or adult wander prevention, emergency alert, and/or senior care. For purposes of this Agreement, "Territory" means the United States, and any geographic areas outside of the United States serviced by Employee during the three (3) year period immediately preceding Employee's termination of employment with CenTrak.



2.5.    Return of CenTrak Property and Confidential Information. Immediately upon the termination of Employee's employment with CenTrak for any reason or no reason, Employee shall return to CenTrak all materials (in whatever form or medium, including electronically stored information) comprising or containing any Confidential Information and all other CenTrak Property in Employee's possession or control. Employee shall not retain any copies of any Confidential Information or CenTrak Property. If the CenTrak Property is not returned in good working order, Employee agrees to pay for any necessary repairs. Employee agrees not to remove any CenTrak Property or tangible Confidential Information from CenTrak's premises except as required in the performance of Employee's work for CenTrak. CenTrak Property is subject to inspection by CenTrak at any time without prior notice. For purposes of this Agreement, "CenTrak Property" means any property (i) owned by CenTrak, (ii) situated on CenTrak's premises, or (iii) provided to Employee by CenTrak.

2.6.    Non-Disparagement. Employee will not, at any time, make, publish or communicate to any party or in any public forum any defamatory or maliciously false statements or comments concerning CenTrak or its businesses, employees, board members, and existing and prospective customers, suppliers, and other associated third parties.

## 3.    INVENTIONS

3.1.    Inventions. Employee understands that CenTrak is engaged in a continuous program of research, development, production and marketing and sales in connection with its business and that, as an essential part of employment with CenTrak, Employee may be expected to make new contributions to and create inventions of value for the Company.

3.2.    Disclosure. During the entire course of employment with CenTrak, Employee will fully and promptly disclose to CenTrak all inventions, improvements, designs, techniques, processes, procedures, original works of authorship, computer software programs, trade secrets and other intellectual property ("Inventions"), that are made, conceived, first reduced to practice or created by Employee during the course of employment with CenTrak, either alone or with others. Employee shall assign to CenTrak any prior inventions, except those prior inventions listed in Schedule A which shall not belong to CenTrak (the "Prior Inventions").

3.3.    Assignment of Inventions. Employee acknowledges that copyrightable works prepared by Employee within the scope of Employee's employment are "works for hire" under the United States Copyright Act and that CenTrak will be considered the author of such works. Employee agrees that all Inventions that (a) are developed using equipment, supplies, facilities or trade secrets of CenTrak, (b) result from work performed by Employee for CenTrak, or (c) relate to CenTrak's business, will be the exclusive property of CenTrak and are assigned by Employee to CenTrak. Employee irrevocably assigns to CenTrak all intellectual property rights (including, but not limited to, patents, copyrights, and trademarks) in any such Invention and any right to modify or control such Inventions (also known as "moral rights"). In the event Employee is unable or unwilling to execute any required assignment documents described in this document, Employee hereby authorizes CenTrak to execute such documents on Employee's behalf, to the extent necessary to effectuate such assignments.

3.4.    Assistance. Employee will assist CenTrak in obtaining legal protections for CenTrak's Inventions in any and all countries. Employee will execute any documents that CenTrak may reasonably request for use in obtaining or enforcing any legal protections and intellectual property rights of CenTrak.



4.    **REVOCATION OF AUTHORIZATION**. Immediately upon the termination of Employee's employment with CenTrak for any reason or no reason, Employee is not permitted to access CenTrak's computer network for any purpose. Any and all authorizations for use of CenTrak's computer network are considered revoked as of the termination of Employee's employment with CenTrak. The provisions of this section apply to the computer network of any affiliate or subsidiary of CenTrak.

5.    **IMMUNITY UNDER THE DEFEND TRADE SECRETS ACT OF 2016**.  Employee shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that: (a) is made (i) in confidence to a federal, state, or local government official, either directly or Indirectly, or to an attorney, and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.  Disclosures to attorneys, made under seal, or pursuant to court order are also protected in certain circumstances under said Act.

6.    **REMEDIES.** Employee acknowledges that breach of Sections 2 and/or 3 of this Agreement by Employee will cause CenTrak substantial and irreparable harm, which may not be adequately compensated by damages. In the event of Employee's actual or threatened breach of the provisions of any or all of the terms of this Agreement, CenTrak shall be entitled to obtain equitable relief, including an order requiring Employee to take any affirmative action necessary to effectuate the terms of this Agreement, and enjoining Employee from committing such actual or threatened breach of this Agreement.  Employee agrees and acknowledges that CenTrak is entitled to equitable relief without posting a bond. In addition to these equitable remedies, CenTrak shall also be entitled to recover from Employee all of its legal remedies along with any reasonable attorney's fees, expenses and costs CenTrak incurs in connection with Employee's breach or threatened breach of this Agreement. If any provision or restriction of this Agreement is determined to be unenforceable, the remaining provisions and restrictions shall not be affected by such determination. Employee further acknowledges and agrees that no material or other breach of any contractual or legal duty by CenTrak under this Agreement or otherwise shall be held sufficient to excuse or terminate Employee's obligations under this Agreement or to preclude CenTrak from obtaining injunctive relief.

If a court of competent jurisdiction determines that any provision or restriction in Sections 2 and/or 3 is unreasonable or unenforceable, Employee and CenTrak agree that said court shall modify such restriction or provision so that it becomes a reasonable and enforceable restriction on the activities of Employee. Employee acknowledges and agrees that the restrictions contained in Sections 2 and 3 are reasonable and necessary to protect the legitimate business interests of CenTrak and will not impair Employee's ability to earn a living. Employee further acknowledges and agrees that the restricted periods of time set forth in Section 2 are material terms of this Agreement and that CenTrak is entitled to Employee's full compliance for the entire periods of time. To insure such compliance Employee agrees that the restricted periods of time in Section 2 shall be tolled during any period of time Employee is not in full compliance with such restrictions.

7.    **REPRESENTATION OF EMPLOYEE.** As a material term of this Agreement, Employee makes the following representations to CenTrak:



7.1.    Employee represents that if any confidentiality, non-disclosure, non-solicitation, invention, or non- competition restrictions or limitations exist regarding any prior employment, Employee has fully disclosed to CenTrak those restrictions and limitations and confirmed that Employee's employment with CenTrak will not violate those restrictions or limitations.

7.2.    Employee represents and agrees that following Employee's termination of employment with CenTrak, Employee will disclose to any future employer of Employee the restrictions and terms contained in this Agreement.  Employee further agrees that CenTrak and its successors and assigns may notify any prospective or future employer of Employee of the restrictions and terms contained in this Agreement.

7.3.    Employee represents that following Employee's termination of employment with CenTrak, during any of the restricted periods set forth in Section 2, Employee will immediately notify CenTrak in writing of the identity of any prospective or actual employers of Employee.

8.    **NOTICE.** Any notice to CenTrak under this Agreement shall be in writing and sent postage prepaid via certified mail return receipt requested addressed to:

> CenTrak, Inc.
> 826 Newtown-Yardley Road
> Newtown, PA 18940
> ATT: CenTrak Legal, e. [legal@centrak.com](mailto:legal@centrak.com)

9.    **CHOICE OF LAW.** This Agreement shall be governed in all respects whether as to validity, construction, capacity, performance or otherwise by the laws of the Commonwealth of Pennsylvania without regard to conflict of law principles. With respect to any disputes under this Agreement, the parties submit to the venue and exclusive jurisdiction of the Commonwealth and federal courts in Bucks County, Pennsylvania, and waive any claims as to forum non-convenience with respect to such courts.

10.    **WAIVER OF JURY TRIAL**.  THE PARTIES EXPRESSLY WAIVE THE RIGHT TO TRIAL BY JURY IN ANY PROCEEDING BROUGHT BY OR AGAINST THEM RELATING TO THIS AGREEMENT

11.    **MISCELLANEOUS.** This Agreement shall bind and inure to the benefit of the parties and their respective legal representatives and estate, except as otherwise provided in this Agreement. This Agreement is personal to Employee, and Employee may not assign Employee's rights (or delegate Employee's duties) under this Agreement without the prior written consent of CenTrak. CenTrak may assign all of its rights under this Agreement to its successors and assigns. No amendments, modifications, alterations, or additions to this Agreement shall be binding unless made in writing and signed by CenTrak and Employee. The failure of any party to enforce a breach of this Agreement shall not be construed as a waiver of the right to enforce any other breach. The parties stipulate and agree that each and every paragraph, sentence, term, and provision of this Agreement shall be considered independent, reasonable, and severable. The invalidity or unenforceability of any particular provision of this Agreement shall not affect the other provisions of it; and this Agreement shall be construed in all respects as if such invalid or unenforceable provision was omitted.  This Agreement constitutes the entire agreement of the parties concerning the subject matter of this Agreement, with all prior negotiations and agreements concerning the subject matter of this Agreement, whether written or oral, being replaced and superseded by this Agreement, except that any agreement relating to inventions or



**CenTrak, Inc. Employee Confidentiality, Non-Competition and Assignment of Invention Agreement**
Document Number: - HR-50002 | Effective Date: 06/01/2017
Process Owner: Gideon Naim | Title: COO

intellectual property signed by Employee shall remain in effect.

12.     **BRIBERY AND CORRUPTION.** As a member of the Halma™ family of companies, CenTrak adheres to the Halma™ Bribery and Corruption Policy Statement (the "B&C Policy"), which may be found at:

http://www.halma.com/about-halma/code-of-conduct//~/media/Files/H/Halma-Plc-V2/about-us/code-of- conduct/halma-code-of-conduct-sep-2011-a4.pdf.

In accordance with the B&C policy, CenTrak has a zero-tolerance policy towards any bribery or corrupt practices in its business dealings. Honoring the spirit and letter of this policy is expected, despite what may be locally acceptable business practice or convention. Employee represents and warrants that Employee has not engaged in business practices, which violate the B&C Policy or any applicable local, state, federal and foreign laws, orders, rules and regulations regarding bribery and corruption. Employee shall remain in compliance with this clause during the term of this Agreement and while conducting any business dealings with, or on behalf of CenTrak. In addition, CenTrak expects those with whom it does business to disclose any coercion by others that may be in violation of the law. In the event that CenTrak determines, in its reasonable sole discretion, that Employee has breached this clause, CenTrak may terminate this Agreement and any other agreement with Employee without penalty and without any compensation to Employee. Employee shall indemnify and hold CenTrak harmless for all claims, demands, damages, costs, fines, penalties, reasonable attorney's fees, and all other expenses arising from failure of the Employee to comply with this clause.

IN WITNESS WHEREOF, intending to be legally bound, the parties have entered into this Agreement effective as of the date signed by the Employee.

**CENTRAK, INC.**

By:     _____

Printed: _____

Title:    _____

Date:    _____

**EMPLOYEE**

Name:   *Todd Stewart*

Printed:  Todd Stewart

Date:    29 January 2020



**CenTrak, Inc. Employee Confidentiality, Non-Competition and Assignment of Invention Agreement**
Document Number: - HR-50002 | Effective Date: 06/01/2017
Process Owner: Gideon Naim | Title: COO

## <u>Schedule A</u>

Prior Innovations



# CenTrak, Inc. Employee Confidentiality, Non-Competition and Assignment of Invention Agreement

This Employee Confidentiality, Non-Competition and Assignment of Invention Agreement ("Agreement") is by and between CenTrak, Inc. and any of its subsidiaries or affiliates (collectively "CenTrak") and the undersigned employee ("Employee").

NOW, THEREFORE, in consideration of the covenants, terms, and conditions contained in this Agreement, CenTrak and Employee agree as follows:

1.      **CONSIDERATION.** Employee and CenTrak acknowledge and agree that Employee's execution of this Agreement is a condition to Employee's employment with CenTrak. Employee acknowledges and agrees that employment by CenTrak with an opportunity for a payment under CenTrak's various compensation plans constitutes valuable and sufficient consideration for the execution of this Agreement, including the restrictive covenants contained in this Agreement. Employee further acknowledges that CenTrak has a substantial investment in the matters protected by this Agreement, including the confidential information, training, and knowledge supplied or to be supplied to Employee in connection with Employee's employment. Employee acknowledges that Employee has carefully reviewed all of the covenants, terms and conditions of this Agreement, and has been advised to seek independent legal counsel prior to its execution.

2.      **RESTRICTIVE COVENANTS.** In consideration of the covenants, terms and conditions in this Agreement, Employee agrees to the following restrictive covenants:

2.1.     Non-Disclosure of Confidential Information. Employee acknowledges that Employee's position with CenTrak will expose Employee to certain confidential, competitively sensitive and proprietary information of CenTrak including, without limitation, techniques; know how; processes; strategies; systems; databases; applications; programs software; methods of operation; negotiations and contracts; research and development; engineering data; financial information (including financial statements); pricing and cost information and strategies; data regarding sales; employee identity and lists; customer identity and lists; potential customer identity and lists; customer requirements information received from any customer of CenTrak; supplier and vendor identity and lists; training materials; product designs; artist content of productions; marketing information, research and strategies; business plans; projections; programming data; formulas; secret processes; machinery or devices; research projects; strategic plans or other information considered by CenTrak to be confidential, competitively sensitive or proprietary or that is considered a trade secret under applicable law, whether in tangible, electronic or other form or medium ("Confidential Information"). Employee acknowledges that Confidential Information is a valuable, special and unique asset of CenTrak. Employee will not, directly or indirectly, during or at any time after Employee's employment with CenTrak, use Confidential Information or any part of such Confidential Information for Employee's benefit or the benefit of any person, business or entity or disclose Confidential Information or any part of such Confidential Information to any person, business, or entity for any reason or purpose whatsoever, except upon the prior written consent of CenTrak. Employee will not, by any means, transfer or forward outside of CenTrak's computer network any CenTrak information, including, without limitation, Confidential Information, without the prior written consent of the CenTrak. The confidentiality obligations herein shall not prohibit Employee from divulging Confidential Information by order of court or agency of competent jurisdiction or as otherwise required by law; however, Employee shall promptly inform CenTrak of any such situations and shall take reasonable steps to prevent disclosure of Confidential Information until CenTrak has been notified of such required disclosure and has had a reasonable opportunity to seek a protective order. Any such notification to CenTrak shall be made pursuant to Section 8 of this Agreement.

2.2.     Non-Solicitation of Employees and Agents. During the term of this Agreement and for a period of one (1) year after Employee's employment with CenTrak is terminated by either party for any reason or no reason, Employee shall not, directly or indirectly, solicit, encourage or induce or attempt to solicit, encourage or induce,



any person who provides services to CenTrak, whether as an employee, consultant, independent contractor or agent, or any entity which provides services to CenTrak under an agency relationship to terminate his, her or its relationship with or services for CenTrak, and shall not, directly or indirectly, either individually or as owner, agent, employee, consultant or otherwise, employ or offer employment to any person, agent or entity that provided services to CenTrak unless such person, agent or entity shall have ceased to provide services to CenTrak, or to have had a legal relationship with CenTrak, for a period of at least six (6) months.

2.3.    Non-Solicitation of Customers and Prospective Customers. During the term of this Agreement and for a period of one (1) year after Employee's employment with CenTrak is terminated by either party for any reason or no reason, Employee will not, directly or indirectly, solicit, contact, or do business with or attempt to solicit or do business with any customer or prospective customer of CenTrak, with respect to activities which compete in whole or in part with the activities of CenTrak. For purposes of this Agreement, "customer" includes any person, business, or entity with whom Employee directly or indirectly had transacted business during Employee's employment with CenTrak. For purposes of this Agreement, "prospective customer" includes any person, business, or entity: (i) that Employee contacted, solicited, or in any way dealt at any time within the twelve (12) month period immediately preceding Employee's termination of employment with CenTrak for the purpose soliciting the sale of goods and/or services of CenTrak; (ii) any person, business, or entity for whom Employee had any direct or indirect responsibility at any time within the twelve (12) month period immediately preceding Employee's termination of employment with CenTrak; and (iii) any person, business, or entity with whom CenTrak, with Employee's direct or indirect participation, had made contact and provided a quote or proposal or had been asked to provide a quote or proposal within the twelve (12) month period immediately preceding Employee's termination of employment with CenTrak.

2.4.    Non-Competition. During the term of this Agreement and for a period of one (1) year after Employee's employment with CenTrak is terminated by Employee for any reason or no reason or by CenTrak for cause, Employee shall not, directly or indirectly on behalf of Employee or any other person, business or entity, compete with CenTrak in the Territory. For purposes of this Agreement, "for cause" means CenTrak's termination of Employee's employment for behavior that, in the sole discretion of the Company, amounts to a violation of the CenTrak's business guidelines. For purposes of this Agreement, "compete" means participating in the discovery, reduction to practice, manufacture, management, planning, research, development, or sale of real time locating technology and/or environmental monitoring (including without limitation the monitoring and/or control of temperature, humidity and other environmental conditions) infant, child or adult wander prevention, emergency alert, and/or senior care. For purposes of this Agreement, "Territory" means the United States, and any geographic areas outside of the United States serviced by Employee during the three (3) year period immediately preceding Employee's termination of employment with CenTrak.

2.5.    Return of CenTrak Property and Confidential Information. Immediately upon the termination of Employee's employment with CenTrak for any reason or no reason, Employee shall return to CenTrak all materials (in whatever form or medium, including electronically stored information) comprising or containing any Confidential Information and all other CenTrak Property in Employee's possession or control. Employee shall not retain any copies of any Confidential Information or CenTrak Property. If the CenTrak Property is not returned in good working order, Employee agrees to pay for any necessary repairs. Employee agrees not to remove any CenTrak Property or tangible Confidential Information from CenTrak's premises except as required in the performance of Employee's work for CenTrak. CenTrak Property is subject to inspection by CenTrak at any time without prior notice. For purposes of this Agreement, "CenTrak Property" means any property (i) owned by CenTrak, (ii) situated on CenTrak's premises, or (iii) provided to Employee by CenTrak.

3.    **INVENTIONS**

3.1.    Inventions. Employee understands that CenTrak is engaged in a continuous program of research, development, production and marketing and sales in connection with its business and that, as an essential part of



employment with CenTrak, Employee may be expected to make new contributions to and create inventions of value for the Company.

3.2.     Disclosure. During the entire course of employment with CenTrak, Employee will fully and promptly disclose to CenTrak all inventions, improvements, designs, techniques, processes, procedures, original works of authorship, computer software programs, trade secrets and other intellectual property ("Inventions"), that are made, conceived, first reduced to practice or created by Employee, either alone or with others. Employee shall assign to CenTrak any prior inventions, except those prior inventions listed in Schedule A which shall not belong to CenTrak (the "Prior Inventions").

3.3.     Assignment of Inventions.  Employee acknowledges that copyrightable works prepared by Employee within the scope of Employee's employment are "works for hire" under the United States Copyright Act and that CenTrak will be considered the author of such works.  Employee agrees that all Inventions that (a) are developed using equipment, supplies, facilities or trade secrets of CenTrak, (b) result from work performed by Employee for CenTrak, or (c) relate to CenTrak's business, will be the exclusive property of CenTrak and are assigned by Employee to CenTrak. Employee irrevocably assigns to CenTrak all intellectual property rights (including, but not limited to, patents, copyrights, and trademarks) in any such Invention and any right to modify or control such Inventions (also known as "moral rights"). In the event Employee is unable or unwilling to execute any required assignment documents described in this document, Employee hereby authorizes CenTrak to execute such documents on Employee's behalf, to the extent necessary to effectuate such assignments.

3.4.     Assistance.  Employee will assist CenTrak in obtaining legal protections for CenTrak's Inventions in any and all countries.  Employee will execute any documents that CenTrak may reasonably request for use in obtaining or enforcing any legal protections and intellectual property rights of CenTrak.

4.     **REVOCATION OF AUTHORIZATION**. Immediately upon the termination of Employee's employment with CenTrak for any reason or no reason, Employee is not permitted to access CenTrak's computer network for any purpose. Any and all authorizations for use of CenTrak's computer network are considered revoked as of the termination of Employee's employment with CenTrak. The provisions of this section apply to the computer network of any affiliate or subsidiary of CenTrak.

5.     **REMEDIES.**  Employee acknowledges that breach of this Agreement by Employee will cause CenTrak substantial and irreparable harm, which may not be adequately compensated by damages. In the event of Employee's actual or threatened breach of the provisions of any or all of the terms of this Agreement, CenTrak shall be entitled to obtain equitable relief, including an order requiring Employee to take any affirmative action necessary to effectuate the terms of this Agreement, and enjoining Employee from committing such actual or threatened breach of this Agreement.  Employee agrees and acknowledges that CenTrak is entitled to equitable relief without posting a bond.  In addition to these equitable remedies, CenTrak shall also be entitled to recover from Employee all of its legal remedies along with any reasonable attorney's fees, expenses and costs CenTrak incurs in connection with Employee's breach or threatened breach of this Agreement. If any provision or restriction of this Agreement is determined to be unenforceable, the remaining provisions and restrictions shall not be affected by such determination. Employee further acknowledges and agrees that no material or other breach of any contractual or legal duty by CenTrak under this Agreement or otherwise shall be held sufficient to excuse or terminate Employee's obligations under this Agreement or to preclude CenTrak from obtaining injunctive relief.

If a court of competent jurisdiction determines that any provision or restriction in Section 3 is unreasonable or unenforceable, Employee and CenTrak agree that said court shall modify such restriction or provision so that it becomes a reasonable and enforceable restriction on the activities of Employee. Employee acknowledges and agrees that the restrictions contained in Section 3 are reasonable and necessary to protect the legitimate business interests of CenTrak and will not impair Employee's ability to earn a living. Employee further acknowledges and agrees that the restricted periods of time set forth in Section 3 are material terms of this Agreement and that



**CenTrak, Inc. Employee Confidentiality, Non-Competition and Assignment of Invention Agreement**
Document Number: - HR-50002 | Effective Date: 06/01/2017
Process Owner: Gideon Naim | Title: CFO

CenTrak is entitled to Employee's full compliance for the entire periods of time. To insure such compliance Employee agrees that the restricted periods of time in Section 3 shall be tolled during any period of time Employee is not in full compliance with such restrictions.

6.      **REPRESENTATION OF EMPLOYEE.** As a material term of this Agreement, Employee makes the following representations to CenTrak:

6.1.      Employee represents to CenTrak that Employee is not subject to any confidentiality, non-disclosure, non-solicitation, invention, or non-competition restrictions or limitations regarding any employment prior to CenTrak.

6.2.      Employee represents that if any confidentiality, non-disclosure, non-solicitation, invention, or non-competition restrictions or limitations exist regarding any prior employment, Employee has fully disclosed to CenTrak those restrictions and limitations and confirmed that Employee's employment with CenTrak will not violate those restrictions or limitations.

6.3.      Employee represents and agrees that following Employee's termination of employment with CenTrak, Employee will disclose to any future employer of Employee the restrictions and terms contained in this Agreement. Employee further agrees that CenTrak and its successors and assigns may notify any prospective or future employer of Employee of the restrictions and terms contained in this Agreement.

6.4.      Employee represents that following Employee's termination of employment with CenTrak, during any of the restricted periods set forth in Section 2, Employee will immediately notify CenTrak in writing of the identity of any prospective or actual employers of Employee.

7.      **NOTICE.** Any notice to CenTrak under this Agreement shall be in writing and sent postage prepaid via certified mail return receipt requested addressed to:

> CenTrak, Inc.
> 826 Newtown-Yardley Road
> Newtown, PA 18940
> ATT: CenTrak Legal, e. legal@centrak.com

8.      **CHOICE OF LAW.** This Agreement shall be governed in all respects whether as to validity, construction, capacity, performance or otherwise by the laws of the Commonwealth of Pennsylvania without regard to conflict of law principles. With respect to any disputes under this Agreement, the parties submit to the venue and exclusive jurisdiction of the Commonwealth and federal courts in Bucks County, Pennsylvania, and waive any claims as to forum non-convenience with respect to such courts.

9.      **MISCELLANEOUS.** This Agreement shall bind and inure to the benefit of the parties and their respective legal representatives, heirs, successors, and assigns, except as otherwise provided in this Agreement. This Agreement is personal to Employee, and Employee may not assign Employee's rights (or delegate Employee's duties) under this Agreement without the prior written consent of CenTrak. CenTrak may assign all of its rights under this Agreement to its successors and assigns. No amendments, modifications, alterations, or additions to this Agreement shall be binding unless made in writing and signed by CenTrak and Employee. The failure of any party to enforce a breach of this Agreement shall not be construed as a waiver of the right to enforce any other breach. The parties stipulate and agree that each and every paragraph, sentence, term, and provision of this Agreement shall be considered independent, reasonable, and severable. The invalidity or unenforceability of any particular provision of this Agreement shall not affect the other provisions of it; and this Agreement shall be construed in all respects as if such invalid or unenforceable provision was omitted. This Agreement constitutes the entire agreement of the parties concerning the subject matter of this Agreement, with all prior negotiations and agreements concerning the subject matter of this Agreement, whether written or oral,



**CenTrak, Inc. Employee Confidentiality, Non-Competition and Assignment of Invention Agreement**
Document Number: - HR-50002 | Effective Date: 06/01/2017
Process Owner: Gideon Naim | Title: CFO

being replaced and superseded by this Agreement, except that any agreement relating to inventions or intellectual property signed by Employee shall remain in effect.

10.    **BRIBERY AND CORRUPTION.** As a member of the Halma™ family of companies, CenTrak adheres to the Halma™ Bribery and Corruption Policy Statement (the "B&C Policy"), which may be found at:

http://www.halma.com/about-halma/code-of-conduct//~/media/Files/H/Halma-Plc-V2/about-us/code-of-conduct/halma-code-of-conduct-sep-2011-a4.pdf.

In accordance with the B&C policy, CenTrak has a zero-tolerance policy towards any bribery or corrupt practices in its business dealings. Honoring the spirit and letter of this policy is expected, despite what may be locally acceptable business practice or convention. Employee represents and warrants that Employee has not engaged in business practices, which violate the B&C Policy or any applicable local, state, federal and foreign laws, orders, rules and regulations regarding bribery and corruption. Employee shall remain in compliance with this clause during the term of this Agreement and while conducting any business dealings with, or on behalf of CenTrak. In addition, CenTrak expects those with whom it does business to disclose any coercion by others that may be in violation of the law. In the event that CenTrak determines, in its reasonable sole discretion, that Employee has breached this clause, CenTrak may terminate this Agreement and any other agreement with Employee without penalty and without any compensation to Employee. Employee shall indemnify and hold CenTrak harmless for all claims, demands, damages, costs, fines, penalties, reasonable attorney's fees, and all other expenses arising from failure of the Employee to comply with this clause.

IN WITNESS WHEREOF, intending to be legally bound, the parties have entered into this Agreement effective as of the date signed by the Employee.

**CENTRAK, INC.**

By: _Thomas Veitz_ <sub>Electronically Signed By</sub>

Printed: _Thomas Veitz_

Its: _____

Date: _3/1/2021_

**EMPLOYEE**

Name: _Christine Sei_ <sub>Electronically Signed By</sub>

Printed: _Christine Sei_

Date: _3/1/2021_

**CenTrak, Inc. Employee Confidentiality, Non-Competition and Assignment of Invention Agreement**
Document Number – HR-50002 | Effective Date: 06/01/17
Process Owner: Gideon Naim | Title - CFO

*Page 5 of 5*



# CenTrak, Inc. Employee Confidentiality, Non-Competition and Assignment of Invention Agreement

This Employee Confidentiality, Non-Competition and Assignment of Invention Agreement ("Agreement") is by and between CenTrak, Inc. and any of its subsidiaries or affiliates (collectively "CenTrak") and the undersigned employee ("Employee").

NOW, THEREFORE, in consideration of the covenants, terms, and conditions contained in this Agreement, CenTrak and Employee agree as follows:

1.     **CONSIDERATION.** Employee and CenTrak acknowledge and agree that Employee's execution of this Agreement is a condition to Employee's employment with CenTrak. Employee acknowledges and agrees that employment by CenTrak with an opportunity for a payment under CenTrak's various compensation plans constitutes valuable and sufficient consideration for the execution of this Agreement, including the restrictive covenants contained in this Agreement. Employee further acknowledges that CenTrak has a substantial investment in the matters protected by this Agreement, including the confidential information, training, and knowledge supplied or to be supplied to Employee in connection with Employee's employment. Employee acknowledges that Employee has carefully reviewed all of the covenants, terms and conditions of this Agreement, and has been advised to seek independent legal counsel prior to its execution.

2.     **RESTRICTIVE COVENANTS.** In consideration of the covenants, terms and conditions in this Agreement, Employee agrees to the following restrictive covenants:

2.1.     Non-Disclosure of Confidential Information.  Employee acknowledges that Employee's position with CenTrak will expose Employee to certain confidential, competitively sensitive and proprietary information of CenTrak including, without limitation, techniques; know how; processes; strategies; systems; databases; applications; programs software; methods of operation; negotiations and contracts; research and development; engineering  data; financial  information (including financial statements); pricing and cost information  and strategies;  data regarding sales;  employee identity  and lists customer identity and lists; potential customer identity and lists; customer requirements information received from any customer of CenTrak; supplier and vendor identity and lists; training materials; product designs; artist content of productions; marketing information, research and strategies; business plans; projections; programming data; formulas; secret processes; machinery or devices; research projects; strategic plans or other information considered by CenTrak to be confidential, competitively sensitive or proprietary or that is considered a trade secret under applicable law, whether in tangible, electronic or other form or medium ("Confidential Information").  Employee acknowledges that Confidential Information is a valuable, special and unique asset of CenTrak. Employee will not, directly or indirectly, during or at any time after Employee's employment with CenTrak, use Confidential Information or any part of such Confidential Information for Employee's benefit or the benefit of any person, business or entity or disclose Confidential Information or any part of such Confidential Information to any person, business, or entity for any reason or purpose whatsoever, except upon the prior written consent of CenTrak. Employee will not, by any means, transfer or forward outside of CenTrak's computer network any CenTrak information, including, without limitation, Confidential Information, without the prior written consent of the CenTrak.  The confidentiality obligations herein shall not prohibit Employee from divulging Confidential Information by order of court or agency of competent jurisdiction or as otherwise required by law; however, Employee shall promptly inform CenTrak of any such situations and shall take reasonable steps to prevent disclosure of Confidential Information until CenTrak has been notified of such required disclosure and has had a reasonable opportunity to seek a protective order. Any such notification to CenTrak shall be made pursuant to Section 8 of this Agreement.

2.2.     Non-Solicitation of Employees and Agents. During the term  of  this Agreement and for a period of one (1) year after Employee's employment with  CenTrak  is terminated by either party for any reason or no reason, Employee shall not, directly or indirectly, solicit, encourage or induce or attempt to solicit, encourage or induce,



any person who provides services to CenTrak, whether as an employee, consultant, independent contractor or agent, or any entity which provides services to CenTrak under an agency relationship to terminate his, her or its relationship with or services for  CenTrak, and shall not, directly or indirectly, either individually or as owner, agent, employee, consultant or otherwise, employ or offer employment to any person, agent or entity that provided services to CenTrak unless such person, agent or entity shall have ceased to provide services to CenTrak, or to have had a legal relationship with CenTrak, for a period of at least six (6) months.

2.3.    Non-Solicitation of Customers and Prospective Customers. During the term of this Agreement and for a period of one (1) year after Employee's employment with CenTrak is terminated by either party for any reason or no reason, Employee will not, directly or indirectly, solicit, contact, or do business with or attempt to solicit or do business with any customer or prospective customer of CenTrak, with respect to activities which compete in whole or in part with the activities of CenTrak. For purposes of this Agreement, "customer" includes any person, business, or entity with whom Employee directly or indirectly had transacted business during Employee's employment with CenTrak. For purposes of this Agreement, "prospective customer" includes any person, business, or entity: (i) that Employee contacted, solicited, or in any way dealt at any time within  the  twelve  (12)  month  period immediately  preceding  Employee's  termination  of employment with CenTrak for the purpose soliciting the sale of goods and/or services of CenTrak; (ii) any person, business, or entity for whom Employee had any direct or indirect responsibility at any time within the twelve (12) month period immediately preceding Employee's termination of employment with CenTrak; and (iii) any person, business, or entity with whom CenTrak, with Employee's direct or indirect participation, had made contact and provided a quote or proposal or had been asked to provide a quote or proposal within the twelve (12) month period immediately preceding Employee's termination of employment with CenTrak.

2.4.    Non-Competition. During the term of this Agreement and for a period of one (1) year after Employee's employment with CenTrak is terminated by Employee for any reason or no reason or by CenTrak for cause, Employee shall not, directly or indirectly on behalf of Employee or any other person, business or entity, compete with CenTrak in the Territory. For purposes of this Agreement, "for cause" means CenTrak's termination of Employee's employment for behavior that, in the sole discretion of the Company, amounts to a violation of the CenTrak's business guidelines. For purposes of this Agreement,  "compete" means participating in the discovery, reduction to practice, manufacture, management,

planning, research, development, or sale of real time locating technology and/or environmental monitoring (including without limitation the monitoring and/or control of temperature, humidity and other environmental conditions) infant, child or adult wander prevention, emergency alert, and/or senior care.  For purposes of this Agreement, "Territory" means the United States, and any geographic areas outside of the United States serviced by Employee during the three (3) year period immediately preceding Employee's termination of employment with CenTrak.

2.5.    Return of CenTrak  Property and Confidential Information. Immediately upon the termination of Employee's employment with CenTrak for any reason or no reason, Employee shall return to CenTrak all materials (in whatever form or medium, including electronically stored information) comprising or containing any Confidential Information and all other CenTrak Property in Employee's possession or control. Employee shall not retain any copies of any Confidential Information or CenTrak Property. If the CenTrak Property is not returned in good working order, Employee agrees to pay for any necessary repairs. Employee agrees not to remove any CenTrak Property or tangible Confidential Information from CenTrak's premises except as required in the performance of Employee's work for CenTrak. CenTrak Property is subject to inspection by CenTrak at any time without prior notice. For purposes of this Agreement, "CenTrak Property" means any property (i) owned by CenTrak, (ii) situated on CenTrak's premises, or (iii) provided to Employee by CenTrak.

3.    **INVENTIONS**

3.1.    Inventions. Employee understands that CenTrak is engaged in a continuous program of research, development, production and marketing and sales in connection with its business and that, as an essential part of



employment with CenTrak, Employee may be expected to make new contributions to and create inventions of value for the Company.

3.2.    Disclosure. During the entire course of employment with CenTrak, Employee will fully and promptly disclose to CenTrak all inventions, improvements, designs, techniques, processes, procedures, original works of authorship, computer software programs, trade secrets and other intellectual property ("Inventions"), that are made, conceived, first reduced to practice or created by Employee, either alone or with others. Employee shall assign to CenTrak any prior inventions, except those prior inventions listed in Schedule A which shall not belong to CenTrak (the "Prior Inventions").

3.3.    Assignment of Inventions.  Employee acknowledges that copyrightable works prepared by Employee within the scope of Employee's employment are "works for hire" under the United States Copyright Act and that CenTrak will be considered the author of such works.  Employee agrees that all Inventions that (a) are developed using equipment, supplies, facilities or trade secrets of CenTrak, (b) result from work performed by Employee for CenTrak, or (c) relate to CenTrak's business, will be the exclusive property of CenTrak and are assigned by Employee to CenTrak. Employee irrevocably assigns to CenTrak all intellectual property rights (including, but not limited to, patents, copyrights, and trademarks) in any such Invention and any right to modify or control such Inventions (also known as "moral rights"). In the event Employee is unable or unwilling to execute any required assignment documents described in this document, Employee hereby authorizes CenTrak to execute such documents on Employee's behalf, to the extent necessary to effectuate such assignments.

3.4.    Assistance.  Employee will assist CenTrak in obtaining legal protections for CenTrak's Inventions in any and all countries.  Employee will execute any documents that CenTrak may reasonably request for use in obtaining or enforcing any legal protections and intellectual property rights of CenTrak.

4.    REVOCATION OF AUTHORIZATION. Immediately upon the termination of Employee's employment with CenTrak for any reason or no reason, Employee is not permitted to access CenTrak's computer network for any purpose. Any and all authorizations for use of CenTrak's computer network are considered revoked as of the termination of Employee's employment with CenTrak. The provisions of this section apply to the computer network of any affiliate or subsidiary of CenTrak.

5.    REMEDIES.  Employee acknowledges that breach of this Agreement by Employee will cause CenTrak substantial and irreparable harm, which may not be adequately compensated by damages. In the event of Employee's actual or threatened breach of the provisions of any or all of the terms of this Agreement, CenTrak shall be entitled to obtain equitable relief, including an order requiring Employee to take any affirmative action necessary to effectuate the terms of this Agreement, and enjoining Employee from committing such actual or threatened breach of this Agreement.  Employee agrees and acknowledges that CenTrak is entitled to equitable relief without posting a bond.  In addition to these equitable remedies, CenTrak shall also be entitled to recover from Employee all of its legal remedies along with any reasonable attorney's fees, expenses and costs CenTrak incurs in connection with Employee's breach or threatened breach of this Agreement. If any provision or restriction of this Agreement is determined to be unenforceable, the remaining provisions and restrictions shall not be affected by such determination. Employee further acknowledges and agrees that no material or other breach of any contractual or legal duty by CenTrak under this Agreement or otherwise shall be held sufficient to excuse or terminate Employee's obligations under this Agreement or to preclude CenTrak from obtaining injunctive relief.

If a court of competent jurisdiction determines that any provision or restriction in Section 3 is unreasonable or unenforceable, Employee and CenTrak agree that said court shall modify such restriction or provision so that it becomes a reasonable and enforceable restriction on the activities of Employee. Employee acknowledges and agrees that the restrictions contained in Section 3 are reasonable and necessary to protect the legitimate business interests of CenTrak and will not impair Employee's ability to earn a living. Employee further acknowledges and agrees that the restricted periods of time set forth in Section 3 are material terms of this Agreement and that



**CenTrak, Inc. Employee Confidentiality, Non-Competition and Assignment of Invention Agreement**
Document Number: - HR-50002 | Effective Date: 06/01/2017
Process Owner: Gideon Naim | Title: CFO

CenTrak is entitled to Employee's full compliance for the entire periods of time.  To insure such compliance Employee agrees that the restricted periods of time in Section 3 shall be tolled during any period of time Employee is not in full compliance with such restrictions.

6.      **REPRESENTATION OF EMPLOYEE.**  As a material term of this Agreement, Employee makes the following representations to CenTrak:

6.1.      Employee represents to CenTrak that Employee is not subject to any confidentiality, non-disclosure, non-solicitation, invention, or non-competition restrictions or limitations regarding any employment prior to CenTrak.

6.2.      Employee represents  that if any  confidentiality, non-disclosure, non-solicitation, invention, or non-competition restrictions or limitations exist regarding any prior employment, Employee has fully disclosed to CenTrak those restrictions and limitations and confirmed that Employee's employment with CenTrak will not violate those restrictions or limitations.

6.3.      Employee represents and agrees that following Employee's termination of employment  with  CenTrak, Employee  will  disclose  to  any  future  employer  of Employee  the  restrictions and terms contained in this Agreement.  Employee further agrees that CenTrak and its successors and assigns may notify any prospective or future employer of Employee of the restrictions and terms contained in this Agreement.

6.4.      Employee represents that following Employee's termination of employment with CenTrak, during any of the restricted periods set forth in Section 2, Employee will immediately notify CenTrak in writing of the identity of any prospective or actual employers of Employee.

7.      **NOTICE.**  Any notice to CenTrak under this Agreement shall be in writing and sent postage prepaid via certified mail return receipt requested addressed to:

> CenTrak, Inc.
> 826 Newtown-Yardley Road
> Newtown, PA 18940
> ATT: Gideon Naim, Chief Financial Officer

8.      **CHOICE OF LAW.** This Agreement shall be governed in all respects whether as to validity, construction, capacity, performance or otherwise by the laws of the Commonwealth of Pennsylvania without regard to conflict of law principles.  With respect to any disputes under this Agreement, the parties submit to the venue and exclusive jurisdiction of the Commonwealth and federal courts in Bucks County, Pennsylvania, and waive any claims as to forum non-convenience with respect to such courts.

9.      **MISCELLANEOUS.** This Agreement shall bind and inure to the benefit of the parties and their respective legal representatives, heirs, successors, and assigns, except as otherwise provided in this Agreement. This Agreement is personal to Employee, and Employee may not assign Employee's rights (or delegate Employee's duties) under this Agreement without the prior written consent of CenTrak. CenTrak may assign all of its rights under this Agreement to its successors and assigns. No amendments, modifications, alterations, or additions to this Agreement shall be binding unless made in writing and signed by CenTrak and Employee. The failure of any party to enforce a breach of this Agreement shall not be construed as a waiver of the right to enforce any other breach. The parties stipulate and agree that each and every paragraph, sentence, term, and provision of this Agreement shall be considered independent, reasonable, and severable. The invalidity or unenforceability of any particular provision of this Agreement shall not affect the other provisions of it; and this Agreement shall be construed in all respects as if such invalid or unenforceable provision was omitted.  This Agreement constitutes the entire agreement of the parties concerning the subject matter of this Agreement, with all prior negotiations and agreements concerning the subject matter of this Agreement, whether written or oral,



**CenTrak, Inc. Employee Confidentiality, Non-Competition and Assignment of Invention Agreement**
Document Number: - HR-50002 | Effective Date: 06/01/2017
Process Owner: Gideon Naim | Title: CFO

being replaced and superseded by this Agreement, except that any agreement relating to inventions or intellectual property signed  by Employee shall remain in effect.

10.     **BRIBERY AND CORRUPTION.** As a member of the Halma™ family of companies, CenTrak adheres to the Halma™ Bribery and Corruption Policy Statement (the "B&C Policy"), which may be found at:

http://www.halma.com/about-halma/code-of-conduct//~/media/Files/H/Halma-Plc-V2/about-us/code-of-conduct/halma-code-of-conduct-sep-2011-a4.pdf.

In accordance with the B&C policy, CenTrak has a zero-tolerance policy towards any bribery or corrupt practices in its business dealings.  Honoring the spirit and letter of this policy is expected, despite what may be locally acceptable business practice or convention. Employee represents and warrants that Employee has not engaged in business practices, which violate the B&C Policy or any applicable local, state, federal and foreign laws, orders, rules and regulations regarding bribery and corruption.  Employee shall remain in compliance with this clause during the term of this Agreement and while conducting any business dealings with, or on behalf of CenTrak.  In addition, CenTrak expects those with whom it does business to disclose any coercion by others that may be in violation of the law.  In the event that CenTrak determines, in its reasonable sole discretion, that Employee has breached this clause, CenTrak may terminate this Agreement and any other agreement with Employee without penalty and without any compensation to Employee.  Employee shall indemnify and hold CenTrak harmless for all claims, demands, damages, costs, fines, penalties, reasonable attorney's fees, and all other expenses arising from failure of the Employee to comply with this clause.

IN WITNESS WHEREOF, intending to be legally bound, the parties have entered into this Agreement effective as of the date signed by the Employee.

**CENTRAK, INC.**

By: _Gideon Naim_
    E2E4BFF1FD11425...

Printed:  Gideon Naim

Its:  CFO

Date:  2/1/2018

**EMPLOYEE**

Name:  _Anthony Fierro_
       E950B868588D4D1...

Printed:  Anthony Fierro

Date:  1/22/2018

**CenTrak, Inc. Employee Confidentiality, Non-Competition and Assignment of Invention Agreement**
Document Number – HR-50002 | Effective Date: 06/01/17
Process Owner: Gideon Naim | Title - CFO

